# THE STATE OF MARYLAND vs. OSCAR MACE.

The act of 1853, ch. 238, in so far as it confers upon the Court of Common Pleas for the city of Baltimore the power to issue the writ of *habeas corpus cum causa*, is unconstitutional, the powers *specially enumerated* in the 10th sec. of the 4th art. of the Constitution being all that are conferred upon that court, and it is not competent for the legislature to add to or subtract from them.

The *appellate* power given to the Court of Common Pleas to revise the judgments of justices of the peace does not authorise that court to do so on *habeas corpus*, for where a judgment is liable to be reviewed by an appeal from it, the writ of *habeas corpus* cannot be applied.

Proceedings against parties, under the act of 1854, ch. 138, for the violation of the same, are *civil actions;* and that part of the act which prohibits an appeal from the judgments of the justices, in such cases, to the Court of Common Pleas is unconstitutional, being in violation of the 19th sec. of the 4th art. of the Constitution, which gives such appeal *"in all civil cases."*

The Court of Common Pleas having no power to review the judgment of a justice of the peace on *habeas corpus*, but having done so, this court has the right to review, on appeal, its action in such case.

The term *debt*, in that clause of the Constitution which provides, that "No person shall be imprisoned for debt," is to be understood as an obligation arising otherwise than from the sentence of a court for the breach of the public peace or commission of a crime.

When legal terms are used in a *statute* they are to receive their technical meaning, unless the contrary intention plainly appears; but this rule does not apply to the interpretation of the *organic law*, which is to be construed according to the acceptation of those who adopted it.

All courts have the right to issue the writ of *habeas corpus ad testificandum*, it being a power indispensable to the trial of causes.

APPEAL from the Court of Common Pleas for Baltimore city.

The appellee was arrested upon a warrant issued by a justice of the peace for a violation of the act of 1854, ch. 138. Judgment was rendered against him for $5 and costs, for the non-payment of which he was committed to jail. He then made application to the Court of Common Pleas for a writ of *habeas corpus cum causa*, which was granted, and, upon hearing, the petitioner was discharged. Upon the passage of the order discharging the party, from which this appeal was taken by the State, the court below, (MARSHALL, J.,) delivered the following opinion:

43    v.5

The State *vs.* Mace.

"'This case involves several questions of constitutional law upon which, as upon all subjects of human thought, men entertain different opinions. As I have arrived at different conclusions upon them from many members of the legal profession and the bench, for whom I entertain great respect, I particularly desire the Court of Appeals to decide them finally. Knowing that the parties against whom my decision will operate can appeal, and fearing that the party to the petition could not, without great inconvenience, if at all, do so, I have given to the opinions expressed by other judicial tribunals of the city a less influence over my judgment upon these questions than I should, perhaps, otherwise have done. The facts of the case are very simple: The petitioner has been adjudged guilty of insuring lottery policies, and has been subjected, in an action of debt, to the payment to the State, for the use, jointly, of the State and the informer, of several fines. I must assume, therefore, for the purposes of this case, that he is an offender against the law and is liable to a pecuniary punishment. The justice, upon rendering the judgments, as a mode of collecting the money due upon them, has committed the party to jail. The validity of the judgments is not questioned here. The legality of the imprisonment as a means of enforcing payment is alone in question. The act of 1777, ch. 6, seems to me to authorize the summary commitment to jail resorted to here, unless the provision of the present Constitution of the State, forbidding "imprisonment for debt," shall be taken to have abolished that remedy. The Convention, in framing the Constitution, indulged in much legislative detail; where they have been brief and used general terms, they must be understood to have done so with a purpose. I take the word "debt," in the article of the Constitution referred to, to mean pecuniary obligation. That in the legislation of this State, the word "debt," when unexplained, has this import, and comprehends fines even for misdemeanors, is evident from the proviso of the 5th sec. of the insolvent law of 1805, ch. 110, where fines for any breach of law are excepted out of an enumeration of liabilities, among which the word debt is the only one which could possibly embrace "fines." It is always in

the power of the legislature to make imprisonment a part of the punishment of offences which they may create anew by enactment, as it is of the criminal courts in adjudicating upon misdemeanors at common law or of statutory creation. The legislature could have punished the offence of vending lottery insurances by imprisonment if they had deemed it proper. They have not done so. I do not feel at liberty, under these circumstances, from any abstract apprehension of my own, as to the *"convenient"* or *"politic,"* to limit the meaning of the language of the Constitution so as to accomplish an end which the legislature have purposely avoided. So enlarged has become the policy of the State on the subject of incarceration of the person, that where offences are made punishable by fine and imprisonment, the fine is made subject to discharge, under the insolvent laws, upon the suffering of a very limited imprisonment. I am of opinion that the imprisonment of this party is illegal.

"Serious doubts exist as to the right of this court to use the writ of *habeas corpus* at all, notwithstanding the express authority of the legislature, conferred by the act of 1853. I entertain these doubts myself, but suppose that where the writ is used as auxiliary to the exercise of the express powers of the court, as contained in the 10th section of the 4th article of the Constitution, it may be legally resorted to. As for example, this court may bring persons before it, I think, to testify, to respond, to prosecute, &c., &c., as incidental to its express jurisdiction. One branch of its express jurisdiction is a general appellate power over the proceedings of justices of the peace. I incline to the opinion, that independently of the act of 1853, above referred to, this writ of *habeas corpus* might be exercised by this court, by implication, in any case where it might be deemed an exercise of this appellate jurisdiction. Surely that act, however unconstitutional it may be otherwise esteemed, must be judged constitutional so far forth as it may be applicable to this appellate power. The Supreme Court of the United States is a court of a jurisdiction expressly defined by statute, as is this court. The Supreme Court is invested by law with power to use this writ. They construe that power

to mean, that where its exercise involves an original act of the court, they can only use the writ in cases where they have original jurisdiction.   Where the writ is invoked that the court may review the action of a tribunal over which it may exert an appellate power, they use it; where it may be appropriately done in this appellate character.   (See the cases of *Bollman and Swartwout*, in *4 Cranch*, 75, and of *Watkins*, in *3* and also in *7 Peters' Reports.*)   I suppose this Court of Common Pleas may, under the 10th sec. of the Constitution, in the judiciary article, review the action of justices of the peace, on appeal in every form under which the appellate power of a court may properly be exercised.   It may examine the correctness of a justice's judgment upon an ordinary appeal.   It may, I think, entertain an appeal from the action of a justice upon a motion to quash an execution or other process.   And it appears to me that this writ of *habeas corpus* is an appropriate mode of exercising the appellate power of this court, where a justice has summarily ordered a defendant to jail, without the intermediate process of a *capias ad satisfaciendum*, upon which distinct and appropriate action might be had without resort to this writ.   Thinking that I have jurisdiction in the case, and that the imprisonment is illegal, I shall order the discharge of the petitioner.''

The cause was argued before LE GRAND, C. J., ECCLESTON MASON and TUCK, J.

*J. M. Campbell* and *John Nelson* for the appellant.
The third section of the original act of 1846, ch. 109, prohibited the insuring of lottery tickets, or numbers of lottery tickets, and inflicted a fine therefor of $50, recoverable before a justice of the peace by an action of debt.   The act of 1854, ch. 138, amended and re-enacted as amended, this section, so as to make the fine $5 instead of $50 for each offence.   Under this latter act warrants were issued against the appellee for a violation thereof, by a justice of the peace, and judgments recovered against him, and upon process issued upon these judgments he was committed to jail.   He then applied to the Court of Com-

mon Pleas to be discharged on *habeas corpus.* The court issued the writ, brought him before it and discharged him.

Upon these facts the *first* question which arises is, has this court the power to act upon this case by way of appeal from the action of the court below, in discharging the party under the writ of *habeas corpus.*

It is said no appeal will lie from a decision on a writ of *habeas corpus.* The authorities on this point are in conflict. 1 *Penr & Watts,* 82. 8 *Alabama Rep.,* 424, *Ex-parte Chaney.* 9 *Sme. & Mar.,* 386, *Steele vs. Shirley.* 9 *Missouri,* 691, *Howe vs. The State.* 1 *La. Annual Rep.,* 414, *Ex-parte Mitchell.* 6 *Johns.* 337, *Yates vs. The People.* 14 *Pet.,* 561, *Holmes vs. Jennison.* The discharge of the party here was but in fact *quashing an execution,* and in such cases an appeal will always lie. 6 *G. & J.,* 76, *Waters vs. Duvall.* In the case of *Bell vs. The State,* 4 *Gill,* 301, the party was refused a discharge, and the court place their decision upon the ground that it was not a *final* judgment; but here the party was *discharged,* and the execution is effectually *quashed:* the judgment so far as the State is concerned is *final.*

But if the Court of Common Pleas had no authority to issue the writ, it is clear that this court may upon appeal review its decision unwarrantably pronounced on the subject. 9 *Gill,* 92, *Webster vs. Cockey, and State vs. Mister, Ante* 11. The question then recurs, had that court the power to issue the writ? We say it had not, for the Constitution gives it no such power. It is not a court of general jurisdiction, but of special and enumerated powers. The 10th section of the 4th article of the Constitution confines and limits its jurisdiction:—1st. To civil suits where the debt or damage claimed shall be over $100, and shall not exceed $500. 2nd. To all cases of appeal from the judgments of justices of the peace; and 3rd. To insolvent applications. In the 11th section of the same article creating the Superior court there is a general grant of jurisdiction "in all other civil cases *which have not been heretofore assigned to the Court of Common Pleas,*" which, of course negatives the exercise of any other jurisdiction by the latter court than that specially given. We say then, the legislature

had no power to give a new subject of jurisdiction to that court, and hence the act of 1853, ch. 238, so far as it attempts to confer upon the Court of Common Pleas the power to issue the writ of *habeas corpus* is unconstitutional and void.

But this power has been claimed for that court by virtue of the appellate jurisdiction given to it over the judgments of the justices of the peace. The case of *Bollman and Swartwout*, 4 *Cranch*, 75, only decides that the Superior court has authority to issue the writ where it would have jurisdiction over the subject matter by way of appeal if the case had been brought before it on appeal. In the present case the party had no right of appeal to the Court of Common Pleas. The 10th section of the 4th article of the constitution declares that the Court of Common Pleas "shall have jurisdiction in all cases of appeal from the judgment of a justice of the peace;" but the 4th section of the 10th article says, that the trial by jury shall be preserved in civil proceedings where the amount in controversy "*exceeds the sum of five dollars.*" The former provision is qualified by the second, and the appeal is restricted to *civil cases* in which appeals were allowed by existing laws, and to such only where the amount involved exceeds the sum of five dollars. This case is neither a *civil* case, nor does the amount involved exceed five dollars. But suppose the right of appeal to the Court of Common Pleas existed, still that court had no power to issue the writ of *habeas corpus*. The judgment of the magistrate was at most merely erroneous, and liable to be examined by an appeal from it, and in such cases the Court of Appeals have decided "the writ of *habeas corpus* cannot be applied." 4 *Gill*, 305, *Bell vs. State*. But we insist further that the granting of this writ is not the exercise of *appellate jurisdiction* at all, but is an exercise of *original jurisdiction*.

Assuming that the Court of Common Pleas had jurisdiction to issue the writ, the next question is, did it commit error in discharging the party? This presents the question whether the Constitution has abolished imprisonment for *fines and penalties*? The Constitution says "There shall be no imprisonment for *debt*;" and the inquiry then is, does this term include *penalties* and *forfeitures*? The insolvent laws which discharge

The State *vs.* Mace.

from imprisonment from debt expressly except penalties and forfeitures, and they show what was meant by the term *debt*, when the new Constitution was adopted. The intention undoubtedly was to release the debtor from imprisonment *at suit* of his fellow, his creditor, but not to affect the State's jurisdiction over its citizens in the administration of justice for the purpose of punishment. The liberty of this freedom from imprisonment for debt was not designed to be a liberty *to do wrong*. If such a construction of the Constitution can be maintained, the State is stripped of all power to administer justice through the instrumentality of *moneyed penalties*.

*Milton Whitney* for the appellee, in support of his motion to dismiss the appeal, argued:

1st. That no appeal lies to this court from any judgment of the Court of Common Pleas. By the 2nd section of the 4th article of the Constitution, the present Court of Appeals is vested with appellate jurisdiction co-extensive with the limits of the State, but to be exercised only in such cases as were then allowed by law to be exercised by the then existing Court of Appeals, "and such other appellate jurisdiction as may hereafter be provided by law." The act of 1785, ch. 87, provided for appeals from the *county courts* to the *General Court*, and by the act of 1804, ch. 55, this appellate jurisdiction was transferred to the Court of Appeals. This appellate jurisdiction is limited to the judgment of the *county courts*. Such is the jurisdiction vested in this court by the Constitution, and no appellate jurisdiction having been conferred by law, it remains to be seen whether it can entertain such jurisdiction from the judgments of the Court of Common Pleas by virtue of the jurisdiction exercised by the old court from judgments of any *county court*. This court is a special court created by the new Constitution, and limited in its jurisdiction. No right of appeal from its judgments has been conferred by the Constitution or act of Assembly. It is nowhere spoken of as the successor of any county court, or exercising any jurisdiction of the county court as such. The objects over which it is to exercise its jurisdiction are specially enum-

erated. · If appellate jurisdiction is to be derived from the fact *alone*, that it exercises jurisdiction over certain matters heretofore within the jurisdiction of the county court, the same fact would give this court appellate jurisdiction from the decision of a magistrate, for he now exercises jurisdiction over subject matters heretofore within the jurisdiction of the county courts.

2nd. But if such appellate jurisdiction can be exercised, then the judgment in this particular case is not such an one as authorises this court to entertain an appeal, because it is not a *determination or judgment* of the court in a *civil suit or action* within the act of 1785, ch. 87. Lord Coke says "the question is no longer an open one in England," that a writ of error will not lie upon a decision on a writ of *habeas corpus*. See 8 *Rep.* 127, *b*, *Case of the City of London*. 8 *Mod.* 27 *Case of the Dean and Chapter of Trinity Chapel*. 1 *Lord Raymond*, 454, *Groenvelt vs. Burwell*. 3 *Brown's Cases in Par.*, 506, *Pender vs. Herle*. In this county the question has been discussed and decided in several cases, which are collected in 1 *Amer. Law Rep.*, 513, where the result of them is stated to be that the American authorities are decidedly against the right to appeal. But if any doubt remains it must be removed by the case of *Bell vs. The State*, 4 *Gill*, 301, where a full court held there was no appeal from an order of the county court upon a writ of *habeas corpus*, because it was not a *judgment* of the court in a *civil suit* or action within the contemplation of the act of 1785, ch. 87. If this appeal is entertained what judgment is to be reversed? and what is to be done by the court below when the record is remitted? The party is not in the custody of that court, and how can this court cause a person to be retaken who should, in their opinion have been unduly set at large? The judges of our courts are authorised to issue writs of *habeas corpus* in *vacation*. How then would appeals lie, or on what could they be founded? In such case there is no court, no record, and, it is submitted, could be no *judgment* as contemplated by the act of Assembly.

But assuming that the appeal will lie, the appellee then insists:

1st. That the Court of Common Pleas had the power to

issue the writ of *habeas corpus*, because 1st:—The act of 1853, ch. 238, gives it jurisdiction. 2nd. By virtue of the appellate jurisdiction given to it by the 10th section of article 4th of the Constitution from judgments of justices of the peace, the issuing of the writ of *habeas corpus* being the exercises of *appellate* and not *original* jurisdiction. 7 *Pet.*, 568, *Ex-parte Watkins.* 1 *Cranch*, 137, *Marbury vs. Madison.* 3 *Dallas*, 17, *Ex-parte Hamilton.* 4 *Cranch*, 75, *Ex-parte Bollman and Swartwout.* 7 *Wheat.* 38, *Ex-parte Kearney.* 3 *Cranch*, 448, *Ex parte Burford.* 8 *Alabama Rep.*, 427, *Ex-parte Chaney.* 8 *Paige*, 47, *The People vs. Mercein.*

But the appellant cannot urge or rely upon the want of jurisdiction in the Court of Common Pleas to issue the writ, as this point does not appear by *the record* to have been raised in that court as required by the act of 1825, ch. 117.

2nd. The party was properly discharged. The remedy prescribed by the act of 1854, ch. 138, is in its *form, nature* and *character*, a civil proceeding, and being so, its effects and consequences are the same as those flowing from the institution and prosecution to judgment of any other civil cause according to the laws of Maryland. The remedy is a pecuniary one, made so by statute, and to be collected as other small debts. By the judgment of the justice it became *a debt*, due, one-half to the *State*, the other to the informer. "It is a debt *inter partes*, as much so as an action for money had and received." 7 *Gill*, 321, *Day vs. the State.* If the party could have been committed at all, it should have been under a *capias ad satisfaciendum.* The injury done to the State is one of a pecuniary character. The legislature had the *right* to inflict imprisonment, but did not see proper so to do. The liability to pay a penalty for an offence created by statute (not *malum in se*,) originates in *contract.* The party contracts if he violates the law to pay the penalty. 3 *Bl. Com.*, 159. This is a debt made so by statute, decided to be so by the Court of Appeals in 7 *Gill*, 321. The New Constitution abolishes imprisonment for debt; no exception is made, its language is "no person shall be imprisoned for debt." If the legislature saw fit to provide a penalty by way of a *debt* for any violation of the

44    v.5

law and *not* provide for any imprisonment, how can it be said the State is *left powerless.* The legislature has not seen proper *in this case* to exercise that power which they have in many other penal laws, by *adding imprisonment.*

3rd. The act of 1854, ch. 138, is unconstitutional and the judgment of the justice was *void* and not voidable. If it is a criminal proceeding it is void, as it deprives the party of his right of trial by jury. This question was decided by the Circuit Court of the United States for the district of Rhode Island before Judges Curtis and Pitman, to be found in the *Monthly Law Reporter, N. S., Vol. 5, No.* 11, page 625 to 627. The Constitution gives no right of appeal except in *civil cases* instituted before a magistrate, and the act gives no such right, but denies it. If it is a civil proceeding it must be attended with all the incidents of civil proceedings, and the imprisonment was illegal.

4th. The court have the right to decide upon the constitutionality of a law upon *habeas corpus.* 11 *Am. Jurist,* 257, 258, and the case of *Henrick, Monthly Law Rep., N. S., Vol.* 6, *No.* 11.

LE GRAND, C. J., delivered the opinion of this court.

This case comes before us on an appeal from an order of the Court of Common Pleas of Baltimore city, discharging the appellee from the custody of the warden of the jail of Baltimore city, to which he had been committed by Edward J. Peters, a justice of the peace, by "reason of the non-payment of a fine of $5, and $56\frac{1}{4}$ cents, costs, inflicted on him for a violation of the act, entitled, 'An act to prevent frauds on the revenue in the cases hereinafter mentioned, and to punish the perpetrators thereof.'"

The act of 1854, chapter 138,—the one under which the appellee was confined in jail,—after providing against "all insuring of lottery tickets, or parts of lottery tickets," &c., goes on to declare, that any person offending against the provisions of the act "shall be liable to pay, and shall pay, a fine of $5 for each offence, to be recovered before any justice of the peace, by action of debt, in the name of the State, instituted

against the offending party, on the information, under oath, of any citizen of this State or of the commissioner of lotteries; and that all fines received shall be paid over to the said commissioner of lotteries, who shall, after paying the informer one-half of the amount of each and every fine so received, account to the treasurer of the State for the remainder in his hands, *and no certiorari shall issue from any court to said justice either before or after judgment, and no appeal shall be taken from the judgment of said justice in any of the cases hereinbefore mentioned.*"

The first question arising on this appeal is the right of the Court of Common Pleas to issue the writ of *habeas corpus cum causa.* The act of 1853, chapter 238, in language confers this power on the Common Pleas and all the other courts of the State. But it is said this act, in so far as it relates to the Court of Common Pleas, is unconstitutional, and in this opinion we concur. That court is one of limited and specified jurisdiction, and it is not competent to the legislature to add to or subtract from it. The 10th and 11th sections of the 4th article of the Constitution define the extent of the powers of the court. The first declares, "there shall be established for the city of Baltimore one court of law, to be styled the Court of Common Pleas, which shall have civil jurisdiction in all suits where the debt or damage claimed shall be over one hundred dollars, and shall not exceed five hundred dollars; and shall also have jurisdiction in all cases of appeal from the judgment of justices of the peace in said city, and shall have jurisdiction in all applications for the benefit of the insolvent laws of this State, and the supervision and control of the trustees thereof." The other section is as follows: "There shall also be established for the city of Baltimore another court of law, to be styled the Superior Court of Baltimore city, which shall have jurisdiction over all suits where the debt or damage claimed shall exceed the sum of five hundred dollars; and in case any plaintiff or plaintiffs shall recover less than the sum or value of five hundred dollars, he or they shall be allowed or adjudged to pay costs, in the discretion of the court. The said court shall also have jurisdiction as a court

of equity within the limits of the said city, *and in all other civil cases which have not been heretofore assigned to the Court of Common Pleas.*"

It is clear from these sections of the Constitution, that the Court of Common Pleas has no right, as an exercise of original jurisdiction, to issue the writ of *habeas corpus,* and the learned judge who decided this case claimed the right by virtue of his *appellate* power to revise the judgments of justices of the peace. Conceding that the Court of Common Pleas is authorized by the Constitution, *on appeal,* to review all judgments of justices of the peace in the city of Baltimore, it does not, therefore, follow, as held by that court, that this can be done in any case on *habeas corpus.* A great deal of learning on the right of appeal and the right of the Supreme Court of the United States to issue the writ of *habeas corpus* has been expended in the case of *Ex-parte Watkins,* 3 *Peters,* 193, and 7 *Peters,* 568, and in the case of *Holmes vs. Jennison,* 14 *Peters,* 541. We deem it altogether unnecessary to consider the principles recognized by those cases, inasmuch as the question involved in this was definitively settled in the case of *Bell vs. The State, use of Miller,* 4 *Gill,* 305. In that case it was de-clared to be "established, and upon the most conclusive rea-sons, that where the judgment upon which the execution has been issued is merely erroneous and liable to be examined by an appeal from it, the writ of *habeas corpus* cannot be applied."

We think that the powers which are specially enumerated in the 10th section of the 4th article of the Constitution are all that are conferred on that court; and this opinion is fully con-firmed by the language of the 11th section of the same article, which, after indicating some of the authority and jurisdiction conferred on the Superior Court, proceeds to declare, in addi-tion thereto, "and in *all other civil cases which have not been heretofore assigned to the Court of Common Pleas.*" The power to issue the writ of *habeas corpus* is not by the Constitu-tion assigned to the Common Pleas, and therefore, under the 11th section of the 4th article is conferred on the Superior Court. And if the Court of Common Pleas has the right, *on appeal,* to review *all* judgments of justices of the peace in the

city of Baltimore, this cannot be done on *habeas corpus.* Where an appeal will lie *habeas corpus* will not. This is the undeniable decision in 4 *Gill,* 305. This being so, the question is, is that clause in the act of 1854, chapter 138, which prohibits an appeal from the decision of the justice, constitutional? We are clearly of opinion it is not.

It was ably contended, that the provision in the 10th section of the 4th article, which declares the Common Pleas shall "have jurisdiction *in all cases of appeal* from the judgment of justices of the peace in the said city," should, standing alone, be construed so as to apply only to such cases as existing laws, or laws to be passed after its adoption, should allow of, and that the only limitation on this power of the legislature to specify the cases in which appeals should be permitted is to be found in the 4th section of the 10th article, which provides, that "the trial by jury of all issues of fact in civil proceedings, in the several courts of law in this State, where the amount in controversy exceeds the sum of $5, shall be inviolably preserved."

It is doubtless to the interpretation put on this last quoted clause of the Constitution that the act of 1854, chapter 138, owes its existence; for its principal object seems to be to alter the act of 1846, chapter 109, which imposed a fine of $50, so as to deprive the party of the right of appeal. If the Constitution contained only the sections which we have given, we would be inclined to the opinion that the act of 1854 was but a constitutional exercise of legislative power in so far as it denies an appeal, but they are not the only parts of the Constitution bearing on the subject. The 19th section of the 4th article gives an appeal in *all* cases: the language is, "*an appeal shall lie in all civil cases from the judgment of a justice of the peace to the Circuit Court, or to the Court of Common Pleas of Baltimore city.*" The Constitution comprehending the judgment of the justice in *all* civil cases, it is not competent to the legislature to abridge it, as has been attempted by the act of 1854, chapter 138. That the case before the justice was a *civil* case, is established by the decision of the court, in the case of *Day vs. The State of Maryland,* 7 *Gill,* 326. Speaking of the proceedings under the act of 1846, chapter

109, the court say, they are "not criminal cases or prosecutions, but civil actions, actions of debt *inter partes*, and although the object of their institution is the recovery of fines and penalties, yet, in contemplation of law, they are as much regarded as civil actions, as if instead of actions in debt they had been actions for money had and received." In support of this doctrine the court rely upon the case of *Atcheson vs. Everitt, Cowp. Rep.*; 382, which fully sustains it.

Having shown that the Constitution confers a right of appeal from all judgments of a justice of the peace, and, also, where the right of appeal exists the judgment cannot be reviewed in any manner on *habeas corpus*, it follows from these facts that the Court of Common Pleas had no jurisdiction over this case in the manner in which it was sought to be exercised. And this being so, the case of *Webster vs. Cockey*, 9 *Gill*, 92, and the case of *Mister vs. The State, Ante*, 11, establish the right of this court to review on appeal the action of the court below.

From these views it follows, necessarily, that the judgment of the Court of Common Pleas must be reversed. We might stop here; but inasmuch as the question which really gave rise to this controversy, is one which has a wide and great influence upon the administration of the police laws of the State, and has been determined differently by the Superior Court and the Court of Common Pleas, we deem it but proper to indicate the opinion we entertain on the subject.

The 44th section of the 3rd article of the Constitution declares: "No person shall be imprisoned for debt;" and the Court of Common Pleas have decided in this case, that a *fine* imposed by a justice of the peace for a violation of the act of 1854, chapter 138, is a *debt* within the constitutional meaning of the term. In this view we do not concur. We think the Constitution ought to have a common sense interpretation, by which we mean the sense in which it was understood by those who adopted it, and, if it receive such a construction, in our judgment the term debt is to be understood as an obligation, arising otherwise than from the sentence of a court for the

The State *vs.* Mace.

breach of the public peace or commission of a crime. Although it is a well recognized canon of construction, that where legal terms are used in a *statute* they are to receive their technical meaning, unless the contrary plainly appears to have been the intention of the legislature, the principle, however, does not apply to the interpretation of the *organic* law, which is to be construed, according to the acceptation of those who adopted it, as the supreme rule of conduct both for officials and individuals, and, in conformity with this view, it has been habitual for the supreme judiciary of the United States to derive light and instruction from the commentaries of the framers of the Federal Constitution. The writings of Hamilton and Madison in the Federalist have always been held as of the highest authority on all points of doubtful construction. We cannot be insensible to the fact that in all the struggles for the abolition of the law for imprisonment for debt, the advocates of the measure contended it was unjust and cruel to place the unfortunate debtor on the same footing with the disturber of the public peace, or the perpetrator of crimes punishable by fines. The evident intention of the Constitution was to relieve those who could not pay their debts, and not to shield from punishment persons who had violated the public law. The first was an object which addressed itself to the benevolent and kind feelings of its friends, whilst the latter could never have found countenance from any considerable portion of the people of the State. It never could have been the intention of the Convention which framed the Constitution to destroy the whole police system of the State, or to impose upon the legislature the necessity to expressly provide, by new legislation, *imprisonment* in all cases in which *fines* and penalties had been denounced against the violators of the public law. They used the term debt in its popular sense, and the people evidently so understood it. They regarded it, as it was intended, a protection to the unfortunate, and not an immunity to the criminal. If a different view were to obtain, a necessity would arise to substitute for nearly all the ordinances of the city of Baltimore, and the special acts in relation to the differ-

ent counties, which impose fines and penalties, an entirely new system. We cannot be brought to the conclusion that such was the design either of the Convention, or of the people who adopted their work.

In denying to the Court of Common Pleas the right to issue a writ of *habeas corpus*, we of course are to be understood as referring to that writ *cum causa*, and not to the writ of *habeas corpus ad testificandum*. All courts have the right to issue this writ, it being a power indispensable to the trial of causes.

*Judgment reversed.*