STATE OF FLORIDA, *ex rel.*, KATIE LANZ, *Plaintiff in Error*, v. W. H. DOWLING, AS SHERIFF OF DUVAL COUNTY, FLORIDA, *Defendant in Error.*

## En Banc.

## Opinion Filed November 8, 1926.

1. The phrase "due process of law" is a modification of the equivalent expression employed in Magna Charter, "by the law of the land". The modification having taken place or having been first observed in the enactments of Edward III for the protection of his subjects. In English law the two expressions were identical in meaning and were directed to the action of the King.

2. The courts of this country have generally approved the doctrine that the ascertainment of the import of the phrase "due process of law" must be reached by the gradual process of judicial inclusion and exclusion as the cases presented for decision shall require.

3. It may be safely asserted that if the act assailed was authorized and promulgated by the inherent and reserved powers of the state and was enforced with due regard to and observance of the rules established by our system of jurisprudence for the security of life, liberty and property it is not in conflict with the due process clause of the Constitution.

4. The rule seems well settled that when a statute makes criminal an act not *malum in se* or infamous without requiring the act to be knowingly or willfully done, a criminal or fraudulent intent is not an element of the offense, and need not be proven.

5. The term "debt" as used in Section 16 of the Declaration of Rights of the Constitution of Florida refers to those debts arising exclusively from actions *ex contractu* and was never

meant to include damages arising in actions *ex. delicto*, or fines, penalties and other impositions imposed by the courts in criminal proceedings as punishments for crimes committed against the common or statute law.

6. The immunity from imprisonment for debt provision of our Constitution was not intended to shield from punishment those who violate the penal laws of the state, but was designed to relieve from punishment honest debtors who were unable to fulfill their engagements, or who having become honestly indebted to another are unable to pay as they promised though they have acted in good faith towards their creditors.

A Writ of Error to the Circuit Court for Duval County; DeWitt T. Gray, Judge.

Affirmed.

*Geo. C. Bedell, Chester Bedell,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, *Perse L. Gaskins, Wm. M. Madison* and *Shackelford & Brown,* for Defendant in Error.

TERRELL, J.—In the case of Katie Lanz, the plaintiff in error, seeks relief by writ of *habeas corpus* from the charge of having disposed of certain personal property, to-wit: Two rings, which were at the time subject to a lien, without the written consent of the lienee, contrary to the provisions of Chapter 9288, Acts of 1923, Laws of Florida. The Circuit Judge granted a motion to quash the writ, and remanded the petitioner Katie Lanz to the custody of the sheriff. Writ of error was taken to the judgment quashing the writ.

It is contended here that the court below erred in its order quashing the writ of habeas corpus, and in its order

remanding the petitioner to the custody of the sheriff of Duval County.

In support of this contention plaintiff in error challenges the constitutional validity of Chapter 9288, Acts of 1923, Laws of Florida, it being contended that said act is violative of the due process clause of the Fourteenth Amendment of the Constitution of the United States, and Sections Twelve and Sixteen of the Declaration of Rights of the Constitution of Florida, in that it deprives defendant of her liberty and property without due process of law, that it deprives her of her property without just compensation, and that it provides for conviction and imprisonment for debt when no fraud is shown.

The provisions of the Federal and State Constitutions thus brought in question may be stated as follows:

1. The "due process clause" of Section 1 of the Fourteenth Amendment to the Constitution of the United States:

"Nor shall any state deprive any person of life, liberty, or property, without due process of law."

2. Section 12 of the Declaration of Rights of the Constitution of the State of Florida:

"No person shall be subject to be twice put in jeopardy for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation."

3. Section 16 of the Declaration of Rights of the Constitution of the State of Florida:

"No person shall be imprisoned for debt except in cases of fraud."

That part of Chapter 9288, Acts of 1923, Laws of Flor-

ida, assailed as being violative of the foregoing constitutional provisions is as follows:

> "Whoever shall pledge, mortgage, sell or otherwise dispose of any personal property to him belonging, or which shall be in his possession, and which shall be subject to any written lien, or which shall be subject to any statutory lien, whether written or not, or which shall be the subject of any written conditional sale contract under which the title is retained by the vendor, without the written consent of the person, firm, or corporation, holding such lien, or retaining such title; and whoever shall remove or cause to be removed beyond the limits of the county where such lien was created or such conditional sale contract was entered into, any such property, without the consent aforesaid, or shall hide, conceal or transfer, such property with intent to defeat, hinder or delay the enforcement of such lien, or the recovery of such property by the vendor, shall be punished by a fine not exceeding five hundred dollars, or by imprisonment not exceeding one year."

It is first contended by plaintiff in error that the provisions of the act thus quoted are repugnant to the due process clause of the Fourteenth Amendment to the Constitution of the United States and Section 12 of the Declaration of Rights of the Constitution of Florida in that they hamper her in the free use, enjoyment and disposal of her property.

The phrase "due process of law" is a modification of the equivalent expression employed in Magna Charta, "by the law of the land." The modification having taken place or

having been first observed in the enactments of Edward III for the protection of his subjects. In English law the two expressions were identical in meaning and were directed to the action of the King. Restraint against the King was accomplished when he was prevented from acting arbitrarily and was forced to act in accordance with laws duly enacted. The provision that no person should be deprived of life, liberty or property except in pursuance of "the law of the land" imposed no restraint or limitation on Parliament. If the English rule had been applied in this country to the phrase "due process of law" as used in the Fifth and Fourteenth Amendments to the Federal Constitution, its effect would have been only to limit the powers of State and Federal courts and executives, but no limitation would have been imposed by it on legislative power. Den v. Hoboken Land & Imp. Co., 18 How. (U. S.) 272; Taylor's Due Process of Law, Secs. 1 to 9; Law of American Const. (Burdick) 506.

There was very little notice taken of the due process clause in the Fifth Amendment during the first seventy-five years of our country's history, but when it was embraced in the Fourteenth Amendment it immediately became the basis for assault on State legislation from every point of the compass. No provision of the fundamental law has been before the courts for interpretation so often. In one of its early adjudications (Davidson v. Board of Administrators of New Orleans, 96 U. S. 97, test 102) the Supreme Court of the United States held that no State could by its own legislation make anything it chooses due process of law, thus extending the English rule to the legislative department of the government in this country. In Hurtado v. People of California, 110 U. S. 516, test 531, 4·Sup. Ct. Rep. 111, 292, an early and very illuminating case on this point, the court said:

"In this country written constitutions were deemed essential to protect the rights and liberties of the people against the encroachments of power delegated to their governments, and the provisions of Magna Charter were incorporated into Bills of Rights. They were limitations upon all powers of government, legislative as well as executive and judicial."

Frequently during the growth and development of the constitutional history of this country our courts have recognized the advantages to accrue from a comprehensive definition of the phrase "due process of law," but as often they have held that such a definition was impracticable and have laid down the doctrine that the ascertainment of the import of such an important phrase in the constitution should be reached by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require with the reasoning on which such decisions may be formed. Davidson v. Board of Administrators of New Orleans, *supra.*

And yet while the court has repeatedly indicated that it had no intention of announcing a comprehensive definition of the phrase "due process of law," it has in the following from Hurtado v. People of California, *supra,* given us the attributes of its nature and the principles that have from time to time guided the court in its "gradual process of judicial inclusion and exclusion":

"Due process of law in the later (Fifth amendment) refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the princi-

ples of the common law. In the Fourteenth Amendment, by parity of reason it refers to that law of the land in each state, which derives its authority from the inherent and reserved powers of the state exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws and alter them at their pleasure.''

The following authorities support this view: Bank of Columbia v. Okely, 4 Wheat. (U. S.) 235, text 244; Hagar v. Reclamation Dist. No. 108, 111 U. S. 701, text 708, 4 Sup. Ct. Rep. 663; Holden v. Hardy, 169 U. S. 366, text 389, 18 Sup. Ct., Rep. 383; Law of American Const. (Burdick) 506 to 515.

Invoking then the test of ''judicial inclusion and exclusion.'' it may be safely asserted that if the act here assailed was authorized and promulgated by the inherent and reserved powers of the State and was enforced as to the plaintiff in error with due regard and observance of the rules established by our system of Jurisprudence for the security of life, liberty and property it is invulnerable to the assault made on it, and does not deprive defendant of her liberty and property without due process of law; nor does it hamper her in the free use, enjoyment and disposal of her property as she contends.

The title to the Act under review is as follows:

''An Act to Amend Section 5202 of the Revised General Statutes of Florida, relating to disposing of personal property under lien; and to make its provisions applicable to property sold under retained title contract and providing a penalty for the violation thereof.''

Inspection of both the title and body of the Act discloses that it relates to ''personal property under lien,'' the kinds of liens covered by it being specified as written liens, statutory liens whether written or otherwise, and to written conditional sale contracts under which the title is retained by the vendor. As to these three classes the Act makes it unlawful for the owner or possessor of the property covered thereby to pledge, mortgage, sell or otherwise dispose of said property or to remove it from the county where the said lien was created or to hide, conceal or transfer such property with intent to defeat, hinder or delay the enforcement of such lien or the recovery of such property by the vendor without the written consent of the person, firm or corporation holding such lien or retaining such title. The penalty imposed for such violation being a fine of not exceeding Five Hundred Dollars or imprisonment of not exceeding one year.

The Act in other words tends to stabilize the sale and barter in personal property under lien or written conditional sale contract, and to fix its situs within the knowledge of the licensee or vendor while so burdened. It deals solely with property that is in its very nature perishable, is subject to rapid depreciation in value, is easily secluded, and is readily transported from place to place. As to such property no good reason is indicated why the person, firm or corporation holding the lien or conditional sale contract should not be awarded the protection the Act affords.

What then is the substance and spirit of the Act as thus analyzed? ''It is not the words of the law, but the internal sense of it that makes the law: the letter of the law is the body; the sense and reason of the law is the soul.'' It is readily apparent that the sense and reason for the law here questioned is primarily the protection of those who advance money on personal property, or who are in the business of selling personal property and take a retained title note or

conditional sale contract back as security for deferred payments. The Act in other words under such circumstances proceeds on the theory that both the lienor and the lienee and the vendor and the vendee have a substantial right or interest in the subject-matter of the lien or sale and seeks to protect the lienee and the vendor against any undue advantage that might be taken on the part of the lienor or the vendee.

Limitations on the freedom of contract, the use of property, the incidents of ownership of property and the right of the owner to dispose of his property may be said to be among the outstanding developments in the law of all English-speaking people during the last half century. In the beginning these limitations were conceived in terms of the abstract individual or debtor and were not always viewed by court or laity with favor, but the growth and complication of our economic order has witnessed a marked shift from the measurements of these limitations, in terms of the abstract individual to that of measuring them in terms of the social order or interest and when so measured they have generally been upheld. Such acts, no doubt like many others, are at times exploited for base and selfish purposes; but this goes to the question of policy with which the Legislature alone is concerned. We fail to see where the Act in question imposes an unreasonable hardship on plaintiff in error in the use, ownership and disposition of her property, while on the other hand we think it imposes a reasonable limitation on the use of all personal property under lien, and was well within the inherent power of the Legislature to promulgate.

It is next contended that Chapter 9288, Laws of Florida, is unconstitutional and void in that it amounts to conviction and imprisonment for debt where no fraud is charged.

This assault is grounded on Section 16 of the Declaration of Rights of the Constitution of Florida, which is as fol-

lows: ''No person shall be imprisoned for debt except in case of fraud.'' It is proper to note in this connection that the Federal Constitution carries no such provision.

In support of this assignment it is first contended that the statute is invalid in that it omits and fails to require proof of the element of criminal or fraudulent intent. In response to this contention it is enough to say that the rule seems well settled that when a statute makes criminal an act not *malum in se* or infamous without requiring the act to be knowingly or willfully done, a criminal or fraudulent intent is not an element of the offense, and need not be proven. Mills v. State, 58 Fla. 74, 51 South. Rep. 278; Halstead v. State, 41 N. J. L. 552, 32 Am. Rep. 247; Haggerty v. St. Louis Ice Manufacturing & Storage Co., 143 Mo. 238, 44 S. W. Rep. 1114, 40 L. R. A. 151, 65 Am. St. Rep. 647; State v. Foster, 22 R. I. 163, 46 Atl. Rep. 833, 50 L. R. A. 339; Note Vol. 11 L. R. A. 807; 8 R. C. L. 62.

As to whether or not the statute amounts to conviction and imprisonment for debt where no fraud is charged, the authorities are unanimous in holding that the debts intended to be covered by such provisions of the Constitution must be those arising exclusively from actions *ex contractu* and was never meant to include damages arising in actions *ex delicto,* or fines, penalties and other impositions imposed by the courts in criminal proceeding as punishments for crimes committed against the common or statute law. Carr v. State, 106 Ala. 35, 17 South. Rep. 350, 34 L. R. A. 634, citing many cases supporting this doctrine.

The immunity from imprisonment for debt provision of our Constitution was not intended to shield from punishment those who violate the penal laws of the State, but was designed to relieve from punishment honest debtors who were unable to fulfill their engagements, or who having honestly become indebted to another are unable to pay as they promised, though they have acted in good faith

towards their creditors. People v. Cotton, 14 Ill. 1414; State v. Mace, 5 Md. 337; Ex Parte Clark, 20 N. J. L. 648; Carr v. State, *supra;* Smith v. Omans, 17 Wis. 406. The refinement of public opinion on the question of imprisonment for debt has resulted in its abolition and in writing such provisions as the foregoing in practically all our State Constitutions.

We have examined Bailey v. State of Alabama, 219 U. S. 219, 31 Sup. Ct. Rep. 145; Ex Parte Hollman, 79 S. C. 9, 60 S. E. Rep. 19, 21 L. R. A. (N. S.) 242; Minton v. Early, 183 N. C. 199, 111 S. E. Rep. 347; Goode v. Nelson, 73 Fla. 29, 74 South. Rep. 17, and other cases relied on by plaintiff in error. The Bailey and Goode cases declared Alabama and Florida statutes invalid because they were in conflict with the Federal Peonage Statute and the Thirteenth Amendment to the Federal Constitution in that they imposed involuntary servitude for other than a punishment for crime. The Hollman and Minton cases involved the interpretation of statutes imposing a fine for abandoning tenancy contracts where no fraud was shown. Such statutes were held in each case to be in conflict with constitutional provisions against imprisonment for debt except in case of fraud, and in the Hollman case the statute was held to violate the Federal statute against peonage.

The case at bar is clearly distinguishable from these and other cases cited by plaintiff in error. Chapter 9288, Laws of Florida, in our judgment can be construed as nothing more than a fair and reasonable regulation imposed on those who choose to sell, pledge, transfer or otherwise dispose of personal property under lien or conditional sale contract without the consent of the one holding the lien or the contract. The penalty has no reference whatever to debt, but is directed to those who violate the regulation so imposed which is in line with similar regulations imposed by the law on the sale and use of real property and the

right to contract. This case appears to us a living, palpable demonstration of the truism that the law is a progressive science and keeps pace with our advancing civilization. With all the complications now arising in civic and commercial life it would be a vain and ineffective science if it did not do this.

We are therefore of the opinion that Chapter 9288, Laws of Florida, was well within the inherent power of the Legislature to enact, that in the instant case it was executed with due regard to the rules established by our system of jurisprudence for the security of life, liberty and property, and that neither in the enactment or the execution was offense committed against the State or Federal Constitution.

Finding no error in the record, the judgment of the Circuit Court is affirmed.

Affirmed.

BROWN, C. J., AND WHITFIELD, ELLIS, STRUM AND BUFORD, J. J., concur.