### STATE v. PITTMAN.

Circuit Court, Dade County, Criminal Appeal, Division One.
February 25, 1957.

William J. Pruitt, Miami, for appellant.

Richard E. Gerstein, State Attorney, Miami, for appellee.

Before GRADY L. CRAWFORD, VINCENT C. GIBLIN, PAT CANNON, ROBERT L. FLOYD and ROBERT H. ANDERSON, Circuit Judges.

PER CURIAM.

The appellant, William F. Pittman, Sr., was convicted by a jury in the court of crimes of Dade County of the charge of selling a motor yacht which was subject to a lien without the written consent of the lienor. He appeals.

It appears that Pittman on May 6, 1955, with his wife, gave his promissory note to the Barbour Boat Works, Inc., of New Bern, North Carolina, for $2,500, to secure which they executed a preferred ship mortgage on the yacht "Shango." This mortgage was duly filed in the office of the collector of customs of the district of North Carolina, number 15, port of Beaufort, North Carolina, and there recorded. On May 23, 1956, Pittman sold the "Shango" in

Miami to Mrs. Dorothy Martin, of Georgetown, British West Indies, Grand Cayman, for $4,000 in cash and a 1953 Cadillac. He gave her a written statement that the vessel was unencumbered by the lien of any judgment or mortgage.

In the court below the state introduced in evidence a certified copy of the preferred ship mortgage and the testimony of one Rivenbark, vice president and general manager of the Barbour Boat Works of New Bern, that the mortgage was given for repairs on the boat and for advances and that it was unpaid and that he had never given to Pittman any written authorization or consent to dispose of the property covered by it. Mrs. Martin testified that she purchased the boat from Pittman in Miami for the consideration above stated and that he gave her a signed statement that the boat was free and clear of all liens and encumbrances, which was introduced in evidence. She paid him the money and delivered the car to him and he gave her possession of the boat. The Barbour Boat Works had demanded the money due them and had taken legal action to enforce the mortgage.

The jury convicted Pittman. The court sentenced him to the county jail for thirty days and to pay a fine of $300, from which judgment this appeal is prosecuted.

Four questions are posed for our consideration with which we will deal in turn.

*Question No. 1.* Does the selling of a boat encumbered by a lien executed, delivered and recorded in another state, held by a non-resident corporation, constitute a crime against the state of Florida within the purview of section 818.01, Florida Statutes?

The pertinent provisions of the statute are as follows—

"818.01 *Disposing of personal property under lien, etc.*— Whoever shall pledge, mortgage, sell, or otherwise dispose of any personal property to him belonging . . . which shall be subject to any written lien . . . without the written consent of the person holding such lien . . . with intent to defeat, hinder or delay the enforcement of such lien . . . shall be punished, etc."

There is a dearth of authority on the precise question, but our reasoning tells us that the point is not well taken. In Cox v. State, (1932) 25 Ala. App. 38, 140 So. 617, it appeared that the property subject to lien which was removed without the consent of the lienor was an automobile transported from one state to another. The same is true in Bentley v. State, (1954) 37 Ala. App. 463, 70 So. 2d 430. In neither case, however, was the question raised that the

statute was not applicable where property had been moved from one jurisdiction to another.

The statute is silent as to the residence of the lienor, but we see no reason for restricting its application to Florida residents. This is especially true of a preferred mortgage given under the Federal Ship Mortgage Act (Title 46, Sections 921 et seq., U. S. Code). That Act provides—

> "No sale, conveyance, or mortgage which, at the time such sale, conveyance, or mortgage is made, includes a vessel of the United States, or any portion thereof, as the whole or any part of the property sold, conveyed, or mortgaged shall be valid, in respect to such vessel . . . until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs *of the port of documentation of such vessel . . .*"

Thus it appears that in order to give the mortgage validity it was necessary to record it in the office of the collector of customs of the port of documentation, which was in the district of North Carolina. It having been properly recorded there, the holder could sue on it in any court of admiralty of the United States. It would have lent nothing to the mortgage to have recorded it in Florida, and no reason is apparent why it was not within the terms of section 818.01. Counsel cite State ex rel. Lanz v. Dowling, (1926) 92 Fla. 848, 110 So. 522, as authority for the proposition that "the reason for the statute is to protect those who advance money on personal property." But that isn't exactly what the court said in the cited case. It said, and we quote—"It is readily apparent that the sense and reason for the law here questioned is *primarily* the protection of those who advance money on personal property, or who are in the business of selling personal property and take a retained title note or conditional sale contract back as security for deferred payments."

We are not impressed with the argument that it was not the purpose of the Florida legislature to protect North Carolina residents who advance money on property in North Carolina. It was the obvious purpose of the legislature to punish people in Florida who sold property in Florida that was subject to a lien without the consent of the lienor.

It is the *sale* of the property (without the written consent of the lienor) that constitutes the gravamen of the offense. That took place in Dade County. The boat was certainly subject to a lien *enforceable* in Florida, i.e., in the admiralty court of the southern district of Florida. Hence the offense was complete upon consummation of the sale.

*Question No. 2.* Where the burden is upon the state to prove that no written consent was given, is the testimony of one officer of a corporation that he personally did not give written consent and that he does not know whether any other officer gave written consent sufficient evidence to withstand a motion for a directed verdict?

The appellant fails to quote the entire testimony of the corporate official. In addition to the testimony quoted by the appellant, Rivenbark, the vice president and general manager of Barbour Boat Works, said (pages 45-48) —

Q. Now, who has charge of all the books and records of Barbour Boat Works?

A. It comes under my immediate supervision. * * *

Q. If you know, will you tell the court and jury who would have knowledge of any consent to be given by your corporation to a mortgage holder for the sale of property under lien? * * *

A. Any papers of such nature or transactions would be handled by me.

Q. Did your corporation give Mr. Pittman authority to sell this personal property you had under lien to Mrs. Martin? * * *

A. We did not give him permission to sell the boat.

We think this evidence is amply sufficient to meet the burden imposed upon the state. However, we take occasion to observe that the defendant did not take the stand in his own behalf. This, of course, was his privilege under the constitution, but he has to take the bitter with the sweet. If any written consent of the mortgagee had been given, he knew it. All he had to do was to take the stand and testify to that fact by producing the writing, which would not only have settled the point in his favor but would have in all probability resulted in his acquittal.

*Question No. 3.* Is the state required to prove an intent to defeat, hinder or delay the enforcement of a lien in prosecutions under section 818.01, Florida Statutes?

The Florida Supreme Court has decided this point against the appellant on three occasions. Mills v. State, (1910) 58 Fla. 74, 51 So. 278; State ex rel. Lanz v. Dowling, (1926) 92 Fla. 848, 110 So. 522; Pope v. State, (1927) 94 Fla. 254, 113 So. 629.

*Question No. 4.* May the court in its charge to the jury read excerpts from the statute involved and not read the entire statute?

The cases cited by the appellant to support this contention do not do so. Here the statute covered different offenses. The appellant was charged with selling personal property subject to a mortgage without the written consent of the mortgagee. The court charged the jury adequately on this feature of the statute. The Act also covers removal of property beyond the limits of the county where the lien was created by a conditional sale contract. There would seem to be no occasion for instructing the jury on these features of the law.

In fine, we do not think that the appellant has sustained any of his assignments of error and accordingly the judgment of the court of crimes is affirmed.