CARROLL, CHAS., Judge.
The appellant Ralph A. Fossey, the plaintiff below, seeks reversal of a declaratory decree which was entered by the circuit court in Dade County.
The matter which appeared before the trial court was summarized in the appellant’s brief as follows:
“This is an appeal from a declaratory final decree adjudicating that the appellant, Ralph A. Fossey, individually and as County Commissioner of Dade County, Florida, is not qualified to vote upon a resolution to be proposed to the Board of County Commissioners of Dade County, Florida. Said resolution, so to be proposed, among other things, is for the issuance of bonds to construct a system of causeways, bridges, and roadways to contain therein a causeway to Elliott Key. The ground assigned by the trial court as its reason for said adjudication, is the fact that the appellant, a member of said Board, owns lands on Elliott Key. The appellee is Dade County, Florida.
“There is no dispute between the parties as to any fact. The answer of appellee to the complaint of appellant admitted every allegation of fact *757 therein. It denied only that appellant was qualified to vote upon said resolution, to be proposed, under the facts alleged in said complaint; and it asserted affirmatively that such a vote by appellant would be contrary to public policy and would be prohibited by law. Said answer prayed'the Court to construe Section 4.03(E) of the Home Rule Charter of Appellee and determine that such a vote by appellant ■would violate said Charter and be contrary to public policy.”
Dade County was operating under a home rule charter, adopted by the electors on May 21, 1957, on the enabling authority of Article VIII, § 11 of the Constitution of Florida, 26 F.S.A. Section 4.03(E) of the charter provided in pertinent part as follows :
“Any county official or employee of the county who has a special financial interest, direct or indirect, in any action by the Board shall make known that interest and shall refrain from voting upon or otherwise participating in such transaction. * * * ”
Commissioner Fossey was the owner of an undivided one-half interest in approximately 64 acres of land on Elliott Key. In response to a request by another county commissioner, the county attorney had rendered an opinion holding that this charter provision precluded Commissioner Fos-sey from voting on the matter involved. In his suit for declaratory decree Fossey sought to obtain a ruling contrary to' the county attorney’s opinion.
A court can take judicial notice of the fact that a bridge or causeway connecting the mainland with a series of undeveloped keys, including Elliott Key, lying between Key Biscayne and Key Largo in the Atlantic Ocean, would have a substantial impact and influence on the value and the use of the keys property involved. Unless we should wish to blind ourselves to the realities, we must conclude, as did the learned chancellor, that the appellant county commissioner owning a considerable part of Elliott Key held a financial interest which would be affected in a very real and substantial manner depending on the outcome of the vote of the Board of which he is a member.
 On the oral argument of this case the attorney for the county urged this court to amplify the charter provision by defining its scope and fixing its limits, so as to provide a formula for future determination, without the necessity of suits, of its applicability in all circumstances. To do so would be an unwarranted invasion of the legislative process. There is no proper way for the courts to avoid the duty which such a legislative provision places on them to consider its applicability to each new and different set of facts on which it may be invoked or challenged. An all-inclusive interpretation of such an abstract legislative provision can be achieved only as the ultimate result of case decisions through the “gradual process of judicial inclusion and exclusion.” What the United States Supreme Court has said with reference to attempts at a final and comprehensive definition of the due process clause of the Federal Constitution, Amend. 14, is applicable here. In Wolf v. People of State of Colorado, 338 U.S. 25, 28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1787, that court, speaking through Justice Frankfurter, said:
“To rely on a tidy formula for the easy determination of what is a fundamental right for purposes of legal enforcement may satisfy a longing for certainty but ignores the movements of a free society. It belittles the scale of the conception of due process. The real clue to the problem confronting the judiciary in the application of the Due Process Clause is not to ask where the line is once and for all to be drawn but to recognize that it is for the Court to draw it by the gradual and empiric process of ‘inclusion and exclusion.’ Davidson v. New Orleans, 96 U.S. 97, 104, 24 L.Ed. 616, 619. This *758 was the Court’s insight when first called upon to consider the problem; to this insight the Court has on the whole been faithful as case after case has come before it since Davidson v. New Orleans was decided.”
This has been followed by the Florida Supreme Court. See State v. Dowling, 92 Fla. 848, 110 So. 522, 523, and Louis K. Liggett Co. v. Amos, 104 Fla. 609, 141 So. 153, 156. In the Dowling case the court said (110 So. at page 523):
“Frequently during the growth and development of the constitutional history of this country our courts have recognized the advantages to accrue from a comprehensive definition of the phrase ‘due process of law,’ but as often they have held that such a definition was impracticable, and have laid down the doctrine that the ascertainment of the import of such an important phrase in the Constitution should be reached by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be formed. * * *”
We have not overlooked City of Miami Beach v. Schauer, Fla.App.1958, 104 So.2d 129, where this court held that a city councilman was not disqualified to vote on an amendment to a zoning ordinance because of his ownership of property, the value of which would be increased substantially if the proposed amendment should be approved. See also the opinion of the Supreme Court of Florida in Schauer v. City of Miami Beach, Fla.1959, 112 So.2d 838, 71 A.L.R.2d 562, in which certiorari was discharged. The Schauer decision is not contrary to the holding in the instant case, because in the Schauer case there was no statute or charter provision precluding the councilman from voting. The question of the right of County Commissioner Fossey to vote on the proposition involved in the instant case was simplified by the presence of § 4.03(E) of the county’s home rule charter, as a result of which it became necessary only to determine whether the charter provision was applicable in this instance, that is, whether Commissioner Fossey “has a special financial interest, direct or indirect, in any action by the Board.” The chancellor’s holding that the charter provision was applicable to preclude the commissioner’s vote under the circumstances presented should be and hereby is
Affirmed.
PEARSON, Acting Chief Judge, and ODOM, ARCHIE M., Associate Judge, concur.