JOHN PETERSON, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

En Banc.

Opinion Filed May 15, 1928.

*Jones & Green,* Attorneys for Plaintiff in Error;

*Fred H. Davis,* Attorney General and *Roy Campbell,* Assistant Attorney General, for Defendant in Error.

BROWN, J.—Plaintiff in error, John Peterson, and Ruben Stiney, were indicted for the murder of one Caesar Glynn. Both entered pleas of not guilty. Afterwards, Stiney withdrew his plea of not guilty and entered a plea of guilty—to what degree of the offense charged, the record does not state, though it is said in the brief that he pled guilty to

manslaughter. Be that as it may, Ruben Stiney turned State's evidence, and it was upon his testimony that the plaintiff in error was convicted of murder in the first degree without recommendation and sentenced to the electric chair. It might be said that his conviction was had upon the uncorroborated testimony of an accomplice. According to Stiney's testimony, he was an accomplice to the murder, which he says was committed by Peterson. Practically the only evidence which in any way connected the plaintiff in error with the crime was the testimony of Stiney. According to his evidence, the only persons present at this very brutal murder, the motive for which was robbery, were John Peterson, the plaintiff in error, the deceased, Caesar Glynn, and the witness himself, Ruben Stiney. As to the movements and conduct of the witness and the plaintiff in error after the offense was committed, the testimony of this witness is far from convincing and is contradicted in some important particulars by the testimony of several disinterested witnesses, while his description of the murder is so graphic as to be quite convincing that he was present and knew all about how Caesar Glynn came to his death. Plaintiff in error denied all knowledge of the crime and introduced evidence tending to prove an alibi. All three, Peterson, Stiney and the deceased, were negroes who had been working at a railroad construction camp, and the murder took place on or near the railroad track about two miles from Orange City on the night of the day on which they received their pay checks, and Stiney admitted that the motive for the murder was to get the few paltry dollars which Caesar had obtained on his pay check—some sixteen dollars and a few cents.

The common law rule that an accused may be convicted upon the uncorroborated testimony of an accomplice obtains in this State. In many of the states this rule has been

abrogated by statute, 16 C. J. 698. But in cases where conviction is sought on such testimony, it has long been the law in this State that the defendant is entitled to have the court charge the jury that the evidence of an accomplice should be received by the jury with great caution. Bacon v. State, 22 Fla. 51; Shiver v. State, 41 Fla. 631, 27 So. 36; Myers v. State, 43 Fla. 500, 31 So. 275. In these and in many other cases in this jurisdiction, a form of instruction to the jury on this subject has been approved; and such an instruction was given to the jury in this case.

But even at common law, the trial courts were very cautious in their application of the rule; frequently, without warrant of law, modifying it in actual practice. In Vol. 2 of the Bishop's Crim. Proc. 2nd Ed., Sec. 1169, in commenting on the common law rule, that author says:

"Under the common law, the mere uncorroborated testimony of an accomplice will, if beyond a reasonable doubt it satisfies the jury, who are the sole judges of the evidence, sustain a verdict of guilty. But so manifest is the danger of convicting men on evidence from a source confessedly corrupt, and delivered by the witness to shield himself from merited punishment, that the judges, while explaining to the jury their right to convict on it alone, by way of caution advise them not to return a verdict of guilty unless it is corroborated by evidence from a purer source. Yet they are not as of law required to give this advice."

The second assignment of error is based upon the denial by the trial court of the defendant's motion to recall the witness, Ruben Stiney, for the purpose of laying a foundation for impeaching his testimony. This motion was made at the close of the State's testimony. Although defendant's counsel had neglected his opportunity to lay this predicate while the witness was on the stand, and admitted his oversight, yet in view of the great caution with which the testi-

mony of an accomplice should be received, and the close scrutiny to which his testimony should be subjected, especially in a case of this kind where a human life was at stake, we are convinced that the court was in error in denying this motion, and that this error was prejudicial in its nature and calls for a reversal of the judgment. Johnson v. State, 55 Fla. 46, 46 So. 154.

Reversed.

WHITFIELD, TERRELL AND STRUM, J. J., concur.

ELLIS, C. J., AND BUFORD, J., dissent.