The plaintiff in error, J.H. Varnum, on the 18th day of July, 1938, was informed against by the County Solicitor of Escambia County, Florida, and charged with the substantive felony of accessory before the fact to the crime of obtaining money and property by false pretenses. He was duly arraigned, tried, convicted, and sentenced to the State Prison for a period of two years at hard labor. While the information presented contained two counts, the issues were presented to the jury on the first count of the information.
Counsel for plaintiff in error attacked the first count of the information by motion to quash containing several grounds, and after the rendition of the verdict, moved the Court to arrest the judgment on grounds substantially as appeared in the motion to quash. We do not think Count One of the information is fatally defective, nor is it subject to the criticisms offered by the grounds of the motion to quash, but it clearly charges a substantive felony of accessory before the fact.
See Section 7111 C.G.L.; In re: Vann, 136 Fla. 113,186 So. 424; Neumann v. State, 116 Fla. 98, 156 So. 237; Kauz v. State,98 Fla. 687, 124 So. 177; Pope v. State, 84 Fla. 428, 94 So. 865; Albritton v. State, 32 Fla. 358, 13 So. 955.
The evidence appearing in the record shows that J.H. Varnum was Superintendent of Public Instruction of Escambia County, Florida, for some time prior to July 20, 1936, and the School Board of Escambia County expended some $35,000.00 to $40,000.00, annually, in the repair of school buildings of the County, and the Superintendent, by custom or specific instruction from the School Board, from time to time in its behalf, purchased materials necessary to *Page 441 
repair the buildings owned by the County of Escambia and used for school purposes. It was his practice to buy the materials when necessity required and invoices of the purchases were or would be sent to him when he or some employee of the office would place the invoices on a filing hook in the Superintendent's office and there kept until the School Board accumulated the money by which the invoices could be retired or paid. There existed a practice for the Superintendent to approve invoices in behalf of the School Board of Escambia County when it was not in session and for him to deliver the invoices to the owner, who would in turn discount the same at a bank, and in the usual course of dealings the invoice so discounted with the bank would by the Board of Public Instruction of Escambia County be retired or paid by the School Board when in session. The evidence shows instances of a loose, slipshod and careless method prevailing in the office of the Superintendent of Public Instruction as to keeping a record of invoices to be presented to it for payment, and the defendant here failed to keep a record of the invoices, nor was any particular clerk in the office assigned the duty or responsibility to keep an accurate record and filing system of the invoices coming into the office prior to July, 1936.
The principal informed against in this case is Ferrell McDonald and he was engaged in the hardware business in the City of Pensacola prior to July 20, 1936, under the name of Coast Hardware Company. His business was destroyed by fire and he subsequently went through bankruptcy proceedings. A Mr. Armour was held to be a partner in business of Coast Hardware Company, and Mr. McDonald and Mr. Armour each became material witnesses for the prosecution. Mr. Varnum had been a customer of the Coast Hardware Company for a number of years and through him material was sold to the School Board of Escambia County. The *Page 442 
record shows that Mr. Ferrell McDonald, sometime after fire destroyed his hardware business and after going through bankruptcy, went to the State of Mississippi, but when informed against by the County Solicitor in this case returned to the City of Pensacola, and through some agreement not clearly shown by the record, terms were reached by his counsel and the prosecuting attorney, and as a result thereof Ferrell McDonald was not placed on trial under the information as principal, but gave testimony in the cause as a State witness.
Mr. Varnum participated in Escambia County politics and had enemies, and one was instrumental in obtaining an indictment by a grand jury against him and appeared as a witness for the prosecution, but a verdict of not guilty was rendered by a jury. Plaintiff in error contended that some of his political enemies appeared as witnesses for the prosecution in the case at bar. The State's case is based on the testimony of Mr. Ferrell McDonald, who testified that Mr. Varnum came to him at his place of business in Escambia County, Florida, on July 20, 1936, and wanted some money, the net results of which culminated in the plaintiff in error and McDonald jointly preparing a false invoice against the School Board of Escambia County for the sum of $456.50, viz.:
 "COAST HARDWARE CO. 216 South Palafox St.
"Pensacola, Florida, July 20, 1936.
 "Sold to BOARD OF PUBLIC INSTRUCTION ESCAMBIA COUNTY, PENSACOLA, FLORIDA "Terms — All bills due on the 10th of Month following date of purchase. 90 days net
"4/20
 5 Barrels Roof Coating (275 gal) .....@ .60 $165.00
50 Rolls 3-ply Roofing Paper ..........@ 2.20 110.00
 *Page 443 
35 Rolls 30 lb. Roofing Felt ..........@ 2.20 77.00
35 Rolls 15 lb. Roofing Felt ..........@ 2.20 55.00
 1 Ton Asphalt ......................... 27.50
 -------
 Tate Ag. High School 456.50

"Assignment accepted on part of Board Pub. Inst.
"(Signed) J.H. Varnum, Supt."
The false invoice so prepared was accepted for the Board of Public Instruction by J.H. Varnum and the proper notation was placed thereon by him, he returned same to Ferrell McDonald, who went to the American National Bank of Pensacola and in the name of Coast Hardware Company gave his note in the sum of $300.00 and attached the invoice as security for the payment thereof with said bank, and on July 21, 1936, the American National Bank credited to the account of Coast Hardware Company the sum of $293.70. Mr. McDonald testified that he in turn delivered this $293.70 to the defendant, Mr. Varnum, and that the invoice was fictitious and false and no material, or other thing of value, was delivered by his company to the Board for the invoice, but was given at the request and solicitation of the plaintiff in error, and the sum of $293.70 was obtained from the aforesaid bank under these false pretenses.
The plaintiff in error admitted approving the invoice, but denied that it was fictitious and contended that it was an honorable, praiseworthy, and upright business transaction, and the materials therein named and described were bought of the Coast Hardware Company and that some of the roofing so purchased was used on the Tate Agricultural High School situated in Escambia County, Florida, and that the system used by the School Board did not require a written receipt showing delivery. The plaintiff in error contended the suit at bar was a continued effort on the part of his *Page 444 
political enemies to bring him into disrepute by obtaining a conviction, when he would be removed from office, and that the witness McDonald had joined his political enemies on the theory that it would be safer to be a State witness than run the risk of conviction, and otherwise carried out the agreement between the County Solicitor and the attorney for Mr. McDonald.
During the progress of the trial the prosecution introduced into evidence, over the objection of the defendant, State's Exhibit No. 1, which was a record of accounts of the Coast Hardware Company against plaintiff in error and the School Board of Escambia County. This record did not show an invoice in the sum of $456.50, which is the basis of this prosecution. The original page from the book has been certified to this Court as State's Exhibit No. 19. Some of the entries thereon appear to have been written with pen and others with a pencil, and those written with a pencil appear to have been erased, in part, and to have been erased in other places or changed and no evidence was offered by the prosecution as to these erasures and changes or how or by whom they were kept, the manner of making entries thereon and other essentials necessary to make an accurate and authentic set of books. The burden was on the State of Florida to comply with Section 4410 C.G.L., and the decisions of this Court thereon prior to the receipt into evidence of Exhibit No. 19. See Section 4410 C.G.L.; Union Bank of Florida v. Call, 5 Fla. 409; Stewart v. Stewart, 62 Fla. 388, 56 So. 413; Zeigler v. State,95 Fla. 108, 116 So. 241. The statute supra applies to civil and chancery cases but the rules of evidence in criminal cases are more strict than they are in civil and chancery cases.
When the plaintiff in error was on the witness stand counsel for the prosecution, on cross examination, interrogated him as to the payment of other invoices at the bank *Page 445 
and did so over the objection of counsel for plaintiff in error, and some of the questions are, viz.:
"Q. You said, I believe you said in your testimony that you took up invoices at the bank, you used plural, did you not?
"A. I don't remember saying invoices. I took up this invoice.
"Q. Did you take up any other invoices at the bank at the same time? (No answer).
"Q. At the time you took up that invoice, Exhibit No. 8, did you take up any other obligation of the Coast Hardware Company?
"A. I did take up another invoice at the American National Bank at the same time I took up that Four Hundred and Fifty-six Dollars and Fifty Five Cents invoice.
"Q. Whose invoice did you take up on the other occasion? (No answer).
"Q. Did you at the same time take up an invoice of which this is a copy? (No answer.)
"Q. Were the invoices you took up invoices of the Coast Hardware Company?
"A. Yes, sir.
"Q. So you paid this, as I understand, the original note you took up was Three Hundred Dollars and there was a renewal reducing it to Two Hundred and Seventy-five Dollars and to that note was attached Four hundred and Fifty-six Dollars and Fifty Cents invoice?
"A. I never seen this until today. I mean this invoice.
"Q. And you also took up another note of the Coast Hardware Company? (No answer).
"Q. How much was this other note of the Coast Hardware Company that you paid? (No answer).
"Q. How much was the other note of the Coast Hardware Company that you paid? *Page 446 
"A. I don't remember the exact amount, Mr. Caro.
"Q. Why did you feel personally obligated to pay this second invoice?
"A. Yes, sir, I took up two invoices of the Coast Hardware Company at the same time. The School Board has never paid this Four Hundred and fifty-six Dollars and Fifty Cents invoice, that is right.
"Q. This second invoice you took up at the Bank has the School Board ever paid that?
"A. No, sir, the School Board has never paid it. I don't know where those invoices are now. I don't know where the notes are now.
"Q. This invoice, Exhibit No. 8, that you say you signed is dated April 20th, the invoice is dated July 20th, but the date of purchase is 4-20, is it not?
"A. That is what it says.
"Q. Did you offer any explanation as to how the period of two months passed that invoice was not called to the attention of the School Board?
"A. It was never presented."
It appears that the purpose of these questions was to discredit not only the plaintiff in error but the testimony of the plaintiff in error before the jury by showing that he had discounted with the bank other fictitious invoices and the jury could infer therefrom that he had committed other similar crimes. Evidence of other crimes is improper. See Suarez v. State,95 Fla. 42, 115 So. 519; Denton v. State, 66 Fla. 87, 62 So. 914; Gafford v. State, 79 Fla. 581, 84 So. 602; Boyett v. State,95 Fla. 597, 116 So. 476; Gunnels v. State, 96 Fla. 659, 118 So. 91; Hartman v. State, 121 Fla. 627, 164 So. 354.
The office of Superintendent of Schools in Escambia County is filled by the qualified electors of said County at an election called for this purpose and plaintiff in error had contested with other candidates for this office, and plaintiff in *Page 447 
error's theory was that because of political expendiency he assumed the payment of the note in the sum of $300.00 at the American National Bank given by Ferrell McDonald and in this manner would continue to have the support, friendship and influence of not only the bank and its friends and customers, but that of Ferrell McDonald and his friends, and the payment of the note, as he saw it, would restore him to the good graces of all the parties connected with the transaction. In other words, the payment of the note over a period of years would prove profitable and economical from a candidate's point of view.
This Court has held with regularity that the entire charges or instructions given a jury must be considered when a single instruction is assigned as error. (See Lewis v. State, 55 Fla. 54, 45 So. 998). The trial court had the political situation in mind when he charged his jury in the following language:
"Gentlemen of the Jury, the Court intended to instruct you that you will not let political questions or differences enter into your consideration of this case in giving you the charge a while ago as to whether or not political influence may have caused parties to do some thing they would not have done otherwise. You can take that into consideration in determining what might be the intention."
Counsel for plaintiff in error requested the trial Court to go one step further by instructing the jury, in addition to the above charge, as follows:
"Charge No. 13. I charge you that the Court did not mean to instruct the jury that they were to disregard the political situation of the defendant in considering his actions in taking up the note and invoice from the American National Bank."
The trial Court refused to give requested charge No. 13 above quoted, and counsel for plaintiff in error cites the following *Page 448 
authorities in support of his contention that same should have been given, viz.: Dwyer v. State, 93 Fla. 777, 112 So. 62; Thomas v. State, 36 Fla. 109, 18 So. 331; Cook v. State, 46 Fla. 20,35 So. 665; Pinson v. State, 28 Fla. 735, So. 706; Newberry v. State, 26 Fla. 334, 8 So. 445; Croft v. State, 117 Fla. 832,158 So. 454; Southern Pine Co. v. Powell, 48 Fla. 154, 8 So. 445. It is possible, in light of all the facts surrounding this assignment, that the jury would have been better informed had the trial court given the charge or instruction as requested by counsel.
It is contended that the lower court erred when he charged or instructed the jury in the language, viz.:
"The defendant, Ferrell McDonald, not the defendant I mean the witness, Ferrell McDonald, is what is known as an accomplice in crime. The Court charges you that all accomplices in crime are competent witnesses against the coperpetrator of the crime and the evidence should be weighed by the jury though uncorroborated and given such weight as the jury believe it entitled to. If the testimony is corroborated by other testimony it should be entitled to greater weight than if uncorroborated. While the testimony of accomplices should be received with caution, especially if uncorroborated, still it should not be rejected if the jury believe it entitled to weight. You are the judges of the statement of an accomplice and you must give them such weight as you consider them entitled to in reviewing all of the testimony."
Counsel for plaintiff in error excepted to the charge, supra,
and asserts that it fails to harmonize with the decisions of this Court, and requested the trial court to charge or instruct the jury in the following language, viz.:
"I further charge you that the State is relying upon testimony of an accomplice that is to say Ferrell McDonald to establish the guilt of the defendant. Testimony of an accomplice *Page 449 
should be received and considered with great caution and unless you are satisfied beyond a reasonable doubt of the guilt of the defendant it is your duty to find the defendant not guilty."
The trial court refused to give this requested charge, and counsel cites the following authorities: Myers v. State, 43 Fla. 500, 31 So. 725; Shiver v. State, 41 Fla. 631, 27 So. 26; Peterson v. State, 95 Fla. 925, 117 So. 227; Samuels v. State,123 Fla. 280, 166 So. 743; Bass v. State, 121 Fla. 208,163 So. 485.
It is contended that the charge assigned as error omitted the word "great" and the requested charge, not given by the trial court, contained the word "great." It is the law of Florida that an accused may be convicted upon the uncorroborated testimony of an accomplice and the trial court so charged. The cited authorities sustain the contention that a defendant, as a matter of law, is entitled to have the court charge the jury that the evidence of an accomplice should be received by the jury with great caution.
The record shows that prior to July 1936, no reliable or accurate record was made or kept of "invoices" by the Superintendent or by the Board of Public Instruction of Escambia County other than placing same on a hook in the office and when the "invoices" were approved and returned to the owners who hypothecated or discounted the same at one of the banks of the City of Pensacola, there was no existing system or method of accounting for such "invoices" except when presented for payment by the person with whom it was discounted. We have considered the testimony of the State auditor, bookkeeper, and employee or clerk, as well as that of the members of the School Board, and fail to see or observe the materiality of this testimony when considered in connection with the then prevailing system *Page 450 
for keeping invoices. The evidence so offered can be classified as negative testimony.
When considering each of the above assignments separately and apart, we may safely conclude that any one thereof would not justify a reversal of the judgment appealed from, but when reviewing all the assignments as a unit in light of the entire record as one single reason for a reversal, the conclusion is irresistible that the plaintiff in error failed to receive such a trial as is contemplated by Section 4 of the Declaration of Rights of the Constitution of Florida. We cannot say that justice and right prevailed in the lower court but think that the issues here involved should be passed upon by another jury.
The judgment appealed from is reversed and a new trial granted. It is so ordered.
TERRELL, C.J., and WHITFIELD, BUFORD and CHAPMAN, J.J., concur.
BROWN and THOMAS, J.J., concur in conclusion.