GEORGE COSTON v. STATE.

190 So. 520
En Banc
Opinion Filed July 14, 1939

H. B. S. *Hammond* and *W. H. Poe,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—The record in this case shows that Robert Etty, around the hour of midnight on February 15, 1938, pursuant to a previous agreement, went to room number 208 of one of the leading hotels of the City of Orlando, then occupied by Dolores Myerly or Marie Bayouth. He had with him a miniature bottle of whiskey obtained some few minutes prior thereto from one Donald Long. Robert Etty was promptly admitted to the room and Dolores Myerly soon learned of the miniature bottle of whiskey and requested a drink. The bottle was delivered to her, when she removed the top and poured some of the contents of the bottle into a glass and drank a portion, and then exclaimed, "What in the world did you put in that stuff?" She turned and walked back toward the rear door of the room and fell at the foot of the bed unconscious.

Etty tried to revive her by the use of wet towels, and, having failed so to do, called a physician who arrived or reached the room within about ten minutes, and some ten

or fifteen minutes thereafter the young woman died. The contents of the glass and bottle were delivered to a chemist. The stomach of the deceased was removed and the contents thereof likewise delivered to the same chemist. An analysis was made and the stomach found to have or contain a great quantity, or about 14 grains of potassium cyanide; the contents of the glass and bottle about 8 grains, and the estimated number of grains of potassium cyanide in the miniature bottle of whiskey was placed about 25 grains. The testimony shows that five grains will produce death.

When Robert Etty was taken into custody shortly afterwards, he identified Donald Long as the person from whom he obtained the poisoned whiskey, and when Donald Long was arrested he identified George Coston as the person giving him the poisoned whiskey on the afternoon of February 14, 1938. Dr. E. N. Sikes testified he delivered to Coston one-fourth of a pound of potassium cyanide. It was not shown that Donald Long or George Coston knew or were acquainted with the deceased Dolores Myerly. George Coston was the owner of and operated for some time in the City of Orlando a private detective agency, and had given employment to Donald Long since the Fall of 1937 until February, 1938.

The grand jury of Orange County, Florida, indicted George Coston, Donald Long and Dr. E. N. Sikes for the unlawful death of Dolores Myerly in twelve separate counts. They were arraigned and each entered a plea of not guilty. A severance was granted as to George Coston and he was placed on trial, convicted and sentenced to be electrocuted. The case was submitted to the jury under counts 1, 2, 3, 4, 9, and 10 of the indictment. Counts 1, 2, 9, and 10 were drafted under Section 7645, C. G. L., and counts 3 and 4 under Section 7137, C. G. L.

Count 1 alleged that George Coston unlawfully and feloniously adulterated whiskey with potassium cyanide and gave it to Donald Long and Donald Long gave it to Robert Etty, and that Robert Etty, in turn, gave it to Dolores Myerly, who drank a portion thereof and was thereby poisoned and the effect of which was to produce her said death. The second count is substantially the same as the first count, with the additional allegation that George Coston did the acts described in Count 1 with malice aforethought; and Counts 3 and 4 are the same as Counts 1 and 2, with the further allegation that the acts and deeds were committed with a premeditated design to kill Donald Long as set out in Count 3, and with the premeditated design to kill Dolores Myerly as set out in Count 4. Count 9 alleges that George Coston and Donald Long unlawfully and feloniously adulterated liquor with potassium cyanide; and Count 10 alleges that George Coston and Donald Long unlawfully and feloniously and of their malice aforethought adulterated whiskey with potassium cyanide and that Long delivered or gave the said adulterated whiskey to Robert Etty, who gave it to Dolores Myerly, and that her death was caused by poison from the drinking of a portion thereof. Dr. N. E. Sikes is charged as an accessory before the fact in each count of the indictment.

It is contended that the record fails to show that plaintiff in error intended to kill Dolores Myerly. There is evidence, however, to the effect that plaintiff in error delivered the miniature bottle of adulterated or poisoned whiskey, and, while it was not shown that it was intended for the deceased, regardless of intentions, this conduct was prohibited by law. The law, as well as reason, prevents plaintiff in error from taking advantage of his own wrongdoing, or excusing himself when this unlawful act, if committed by

plaintiff in error, strikes down an unintended victim. The original malice as a matter of law is transferred from the one against whom it was entertained to the person who actually suffered the consequences. of the unlawful act. See Pinder v. State, 27 Fla. 370, 8 So. 837; State *ex rel.* Lanz v. Dowling, 92 Fla. 848, 110 So. 522. The rule, *supra,* is well expressed in Wharton's Criminal Law, Vol. 1 (12th Ed.), pages 207 and 211, pars. 153 and 157, viz.:

"153. Malice Does Not Require Physical Contact.— Malice may be exerted against a party at a distance; as where A lays poison for B in his food, which B afterward takes and dies. And so where A procures an idiot or lunatic to kill B, which is done. In both instances A is guilty of the murder as principal. The same result follows when an injury is produced by frightening the injured party."

"157. Unintended Injury Derives Its Character from Purpose to which It Is Incidental.—When an intent exists to do wrong, and an unintended illegal act ensues as a natural and probable consequence, the unintended wrong derives its character from the general evil intent. A general malovelent purpose to break the law, for instance, or to inflict injury irrespective of any particular malice, gives color to a particular wrongful act committed in execution of the general malevolent purpose. A man out of general malignity may fire on a crowd, or may displace a rail and then, if any life be lost, he is responsible for murder, though he may have had no intention of taking any particular life. It has been further ruled that if a man shoots A by mistaking the person, when intending to shoot B, he is responsible for shooting A, under statutes which make it penal to shoot at another with intent to kill the person shot at. And so has it been held with regard to murder at common

law. We have the same distinction as to burglary, where the intent was to steal something different from that actually stolen; and as to arson, where the intent was to get a reward by giving the earliest information of a fire at the police station, and not to injure the owner; or where an unintended house was burned. And so if there be a deliberate intent, when taking lost goods, to steal, no matter who may be the owner, this intent may be viewed as an intent to steal from A, when A is subsequently discovered as owner. When there is a general intent to do evil, in other words, of which evil the wrong actually done may be looked upon as a probable incident, then the party having such general intent is to be regarded as having intended the particular wrong. A man using a deadly weapon in a crowd, intending to kill, must be regarded as intending to kill all within range of the weapon, whether as a primary object, or as incidental to such primary object. And a general intent to do evil, such as to cover all the natural probable consequences of the act, may be inferred from the circumstances of the case * * *."

The record shows that during the progress of the trial in the lower court the State offered as a witness Buck Moseley, who testified at the time of the trial in May, 1938, that he had personally known the defendant, George Coston, for about three or four months; was 18 years of age; was a cousin of Donald Long; lived with his father on Route 3, Vineland Road, Jacksonville, and admitted that he had been convicted of crime. The witness further testified, over the objection of counsel for defendant, that the defendant Coston had planned, and the witness was to assist in carrying out the plans, to rob Sears, Roebuck store at Orlando; likewise to rob the house of Buddy Durrant; to hit Dr. Livingston over the head and take from him a diamond stick pin which he

wore in his shirt and deliver the pin to Coston; the Winter Park Jewelry store was to be robbed, as well as the Ray Jewelry store situated in Orlando; the further plan was to assault Mr. Page and take his money, and Chauncey Boyer was to be robbed of diamonds. The above testimony of planned robberies between the defendant Coston and the witness Buck Moseley was seasonably objected to by counsel for the defendant, exceptions to these adverse rulings were noted by the trial court. The record shows the following:

"Q. Did you ever commit any of these crimes about which I have asked you?

"A. They were started, but never really completed.

"Q. Did you ever commit one that he had planned?"

But to the question as propounded the defendant then and there objected, on the ground that the question seeks to elicit testimony which is irrelevant and immaterial and does not tend to illustrate any of the issues in this case.

But the judge overruled the said objection, and permitted the said question to be answered, which answer was as follows:

"A. The one at Winter Park High School.

"To which ruling the defendant then and there excepted.

"Q. Who carried you out there?

"A. Mr. Coston.

"Q. In his car?

"A. Yes.

"Thereupon the defendant moved to strike the answer of the witness, on the ground that the same is irrelevant and immaterial, and does not tend to illustrate any of the issues in the case.

"But the said judge denied the said motion.

"To which ruling the defendant then and there excepted."

The plaintiff in error was on trial for the offenses charged

in each count of the indictment. The evidence objected to shows that the defendant and the witness committed a separate and independent crime than the one for which he was being tried, viz., the robbery of the Winter Park High School. The general rule is that in a prosecution for a particular crime, evidence which in any manner shows or tends ·to show the accused has committed another crime, wholly independent of that for which he is on trial, even though it is a crime of 'the same sort, is irrelevant and inadmissible. See Varnum v. State, opinion filed April 28; 1939, not yet reported; Hartman v. State, 121 Fla. 627, 164 So. 354; Gunnels v. State, 96 Fla. 659, 118 So. 919; Boyett v. State, 95 Fla. 597, 116 So. 476; Gafford v. State, 66 Fla. 87, 62 So. 914; Gafford v. State, 79 Fla. 581, 84 So. 602; Denton v. State, 66 Fla. 87, 62 So. 914; Suarez v. State, 95 Fla. 42, 115 So. 519; Langford v. State, 33 Fla. 233, 14 So. 815; Roberson v. State, 40 Fla. 509, 24 So. 474; Nickels v. State, 90 Fla. 659, 106 So. 479; Presley v. State, 63 Fla. 37, 57 So. 605; Pittman v. State, 51 Fla. 94, 41 So. 385; 16 C. J. 586, et seq.; 8 R. C. L. 206.

Counts 9 and 10 of the indictment charged George Coston and Donald Long with unlawfully and feloniously and of their malice aforethought with the adulteration of whiskey that caused the death of Dolores Myerly. These counts were submitted to a jury and plaintiff in error convicted on all counts submitted. The defendant Donald Long was not at the time on trial. · The lower court granted a severance and the defendant Long was offered by the prosecution as a State witness against Coston. The record fails to show that the trial court instructed the jury to the effect that the testimony of an accomplice should be received with great caution. The conviction of plaintiff in error in this case, as shown by the record, rests upon the important testimony of

Donald Long, indicted in two counts with plaintiff in error for the unlawful death of Dolores Myerly.

We think the trial court should have so instructed the jury in the court below, but as the court was not required in writing to so charge the jury we can not hold this reversible error. See Myers v. State, 43 Fla. 500, 31 So. 275; Shiver v. State, 41 Fla. 631, 27 So. 26; Peterson v. State, 95 Fla. 925, 117 So. 227; Samuels v. State, 123 Fla. 280, 166 So. 743; Bass v. State, 121 Fla. 208, 163 So. 485; Anthony v. State, 44 Fla. 1, 32 So. 818; Bacon v. State, 22 Fla. 51.

The prosecution,, over the objections of counsel for plaintiff in error, was permitted in the lower court to introduce evidence tending to prove that the defendant below plotted or planned the commission of ten assaults, robberies and burglaries and three murders. The details of the plans of several of these planned or plotted crimes were detailed before the jury. It was offered by the State upon the theory of showing a motive on the part of the defendant below to commit the crime of poisoning Donald Long. The defendant below could not successfully defend against this testimony of planned or plotted crimes and at the time was on trial for murder under several counts of an indictment. It is possible that some of the purported testimony could have been admitted to show motive or ill feeling on the part of the defendant below toward the witness Donald Long, if ill feeling existed. The rule was enunciated by this Court in White v. State, 59 Fla. 53, 52 So. 805; Deeb v. State, 131 Fla. 362, 179 So. 894. The character of the defendant below was not in issue and the evidence of the alleged plotted crimes could have been made material had the defendant, or his counsel, seen fit to place his general reputation or character in evidence. It was error on the part of the lower court to admit into evidence the details of these

thirteen planned or plotted crimes. See Messer v. State, 120 Fla. 95, 162 So. 146; Wharton's Cr. Evid. Vol. 1 (11th Ed.) 483-496, pars. 343-347; Boyd v. United States, 142 U. S. 450, 12 Sup. Ct. Rep. 292, 35 L. Ed. 1077.

For the errors pointed out the judgment appealed from is reversed and a new trial awarded.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.