RAWLS, Chief Judge.
Valassakis appeals from a conviction for the crime of grand larceny.
Dr. Pete Filos, Dr. John Canakaris and Appellant Valassakis owned the stock of Bellair Apartments, Inc. Defendant was the corporation’s manager and president, and Warren Cole, Jr., was its attorney. The corporate assets had recently been sold and on Friday, November 29, 1963 Cole gave Valassakis a $19,468.79 check drawn on the attorney’s trust account in the Commercial Bank at Daytona Beach. This check was made payable to Bellair Apartments, Inc. and represented part of the purchase price of the corporate assets. Defendant immediately endorsed the check as president of Bellair, deposited same to his personal account in the Commercial Bank, and withdrew $1,000.00 in cash. Later that day he deposited to an old inactive personal account at the First Atlantic National Bank a $10,000.00 check drawn on his account at the Commercial Bank. On Sunday he called Dr. Canakaris and told him to be in Cole’s office on the following Wednesday at which time the funds would be disbursed. The Commercial Bank was closed Saturday and Sunday, but Monday was a busy day for all concerned. On that day the following checks drawn on defendant’s personal account were presented for payment at the Commercial Bank — 1 check for $5,000, 2 checks for $1,000 cash and the $10,000 check which had been deposited *76 at First Atlantic, arid defendant purchased about $7,000 in travelers checks at the First Atlantic National Bank and two one-way tickets for Brussels, Belgium. Meanwhile, Cole had called the Commercial Bank regarding his $19,468.79 check, discovered that it had been improperly endorsed, and requested that payment be stopped.
A few days later the two doctors received a letter from the defendant asking forgiveness for his cowardly act, stating that he was desperate when he left Day-tona, that he had tried to make a “go of our venture” but had made mistakes, and that he would “invest our money to the advantage of all of us, so we can repay the debts that are outstanding.” When defendant’s departing dust had settled, his overdrafts at the Commercial Bank amounted to $7,234.22.
The information charged Valassakis with grand larceny under Section 811.021, Florida Statutes, F.S.A., in that he did take and carry away $7,234.22 in U. S. money, property of Commercial Bank.
In summary, the undisputed facts are that Valassakis had set out to appropriate for himself funds belonging to the corporation. The evidence is clear and positive to the effect that he had no authority to endorse the corporation’s check for the purpose of depositing same to his personal account, but he nevertheless did so and then proceeded immediately on a two-day banking spree to obtain the proceeds in cash or traveler’s checks. This accomplished he departed this state and country, but not until he had written his regrets and apologies to the two men he anticipated would suffer. By a quirk of fate the funds he had assiduously acquired did not belong to the corporation, as was his belief, but to the Commercial Bank.
The only point that merits our attention is Valassakis’ contention that reversible error lay in the material variance between the information and the evidence, since the information charged the defendant with grand larceny of the property of the Commercial Bank at Daytona Beach whereas the evidence, when viewed most favorably to the state, disclosed that the property was that of the corporation.
This is the type case contemplated by Section 811.021, a single statute embracing the separate offenses heretofore known as larceny, embezzlement, obtaining property by false pretenses, etc. The jury found Valassakis guilty of larceny, apparently by obtaining property of the Bank under false pretenses.- Valassakis would now have us believe that any crime he committed was one against the corporation. It has been said that the obvious purpose of statutes like the one under consideration here is to avoid the pitfalls of pleading where a defendant might escape a conviction for one offense by proof he had committed another.[1] Therefore the real question before us is not whether the defendant stole anything belonging to the corporation but whether he stole funds belonging to Commercial Bank. We find that he did and affirm the judgment appealed.
At the outset we note that it has long been the settled law of Florida that a drawee bank is liable for conversion of a check if it makes payment without procuring a genuine endorsement of the payee. Thus, as between the corporation and the Bank any loss would fall upon the Bank.[2]
Since Appellant’s endorsement and presentment of the check to the Bank amounts to an assertion that he was authorized to endorse the check for the purpose of depositing it to his personal account, the crime committed was grand larceny by ob *77 taining property of another by false pretenses. A similar situation existed in Henson v. State.[3] There Henson, an auditor, stole some bonds from the city of Braden-ton. He used the coupons from the bonds as collateral in obtaining a loan from a local bank. In exchange for his note secured by the coupons, the Bank gave Henson a deposit receipt in the sum of $1,936.-00. Shortly thereafter Henson went to a tellers’ window and cashed a $1,500 check. It was held that Henson had obtained property of the Bank by false pretenses. There the Bank had relied upon the false representation that Henson owned the coupons. In the instant case the Bank relied upon Valassakis’ endorsement as being a genuine authorized endorsement.
 Appellant’s final argument is that without intent there is no crime, and the evidence here shows only an intention to take funds belonging to defendant’s corporation. This case is replete with evidence by which the jury could find scienter. The most obvious is the defendant’s letter to the other corporate stockholders from which there can be no doubt that defendant acted upon a predesigned course to obtain for his own use the funds of another. It is immaterial that the defendant believed that the money he took belonged to the corporation. When an intent exists to do wrong, and an unintended illegal act ensues as a natural and probable consequence, or if in committing the act an unintended victim is struck down, the original intent as a matter of law is transferred from the one against whom it was entertained to the person who actually suffered the consequences of the unlawful act.[4]
The judgment appealed is affirmed.
CARROLL, DONALD, K., and JOHNSON, JJ., concur.

. Rosengarten v. State, 171 So.2d 591 (Fla.App.2d 1965).

. Louisville & N. R. Co. v. Citizens & Peoples’ National Bank, 74 Fla. 385, 77 So. 104, L.R.A.1918C, 610 (1917).

. Henson v. State, 140 Fla. 412, 192 So. 163 (1939).

. Coston v. State, 139 Fla. 250, 190 So. 520 (1939).