363 So.2d 617 (1978)
Eleanor WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. JJ-5.
District Court of Appeal of Florida, First District.
October 31, 1978.
*618 Michael J. Minerva, Public Defender, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, and R. Baker King, Asst. State's Atty., Jacksonville, for appellee.
SMITH, Acting Chief Judge.
Wright appeals from her conviction of manslaughter after trial on an information charging murder in the second degree. She urges that the evidence was insufficient to support a conviction because the victim's death was caused by the act of another for which appellant was not responsible; and that her trial was marred by a jury argument by the prosecutor commenting on appellant's failure to testify. We find that the evidence was sufficient to support the manslaughter conviction but that a new trial is required by the prosecutor's jury comment on appellant's failure to testify.
The state's evidence tended to show that appellant, driving an automobile, pursued and intercepted the automobile of an acquaintance, one Harvey, and fired a handgun at him several times at close range. The shots missed, but Harvey rapidly accelerated his car while "ducking bullets" and ran over and killed a pedestrian. Contrasting these facts with those in decisions holding that an assailant's intent to kill is transferred by law from the intended victim to the victim inadvertently slain, appellant argues that the doctrine of transferred intent is applicable only when the accused's deadly instrumentality causes death to the inadvertent victim. E.g., Lee v. State, 141 So.2d 257 (Fla. 1962); Coston v. State, 139 Fla. 250, 190 So. 520 (1939). Here, appellant argues, the victim's death was caused not by her pistol but by Harvey's driving.
We think it unnecessary to rationalize the evidence here in terms of homicide offenses which require proof of an intent, existing in fact or implied in law, to kill the victim. Appellant was convicted of manslaughter, which is a killing by the defendant's "act, procurement, or culpable negligence" not constituting murder or excusable homicide. Section 782.07, Florida Statutes (1977). The issue is therefore one of causation, not whether the defendant intended to effect the death of a particular person. Here the trial court charged the jury on the causation principles stated in Parrish v. State, 97 So.2d 356, 359 (Fla. 1st DCA 1957), cert. den., 101 So.2d 817 (Fla. 1958), which held that "a person who by actual assault or threat of violence causes another person to do an act resulting in physical or corporal injury causing such other person's death is criminally responsible for the homicide." Parrish sustained a conviction for second degree murder, and was unconcerned with whether the accused intended the victim's death. Because the victim died as a result of attempting to escape the defendant's violence, the question was not intent but causation. The court pronounced a causative test which requires jury findings that the victim's act to avoid the defendant's violence must have seemed reasonably necessary; that the victim must have apprehended death or great bodily harm; that the victim's apprehension was reasonable and well-grounded; and that the victim's consequent injury was a natural and probable consequence of the defendant's violence. The Parrish causation test is as applicable when a third person is killed as when the chosen victim is killed. The manslaughter verdict constituted a finding that appellant's violence toward Harvey *619 produced his well-grounded apprehension and flight, immediately resulting in the pedestrian's death. The evidence was sufficient to sustain appellant's conviction for manslaughter. See also Rosier v. State, 343 So.2d 972 (Fla. 1st DCA 1977).
Though the evidence was sufficient to convict, we find that the prosecutor improperly commented to the jury on appellant's failure to testify. Appellant adduced no evidence, but relied on what she conceived to be weaknesses in the state's case. By cross-examination of the state's witnesses, appellant's counsel sought to create jury doubts that a gun was involved in the fracas, or that appellant fired it at Harvey, or that she fired it repeatedly at Harvey. In jury argument defense counsel challenged the state's evidence, which revealed no bullet holes in the car fired on, no wounding of Harvey despite repeated shots at close range, and, indeed, no evidentiary exhibit of the gun or spent cartridges. Defense counsel argued:
But let me tell you one thing that raises a greater doubt in my mind, an absolute greater doubt, that I think each of you ladies and gentlemen ought to consider. Mr. Harvey left, my client stayed there. She was there. Now, if my client did that firing, there is one thing that is absolutely essential to her firing a gun, and that's a gun. Ain't no way I can fire a gun without having a gun, and if she was there, as the testimony clearly indicates, and she was firing a gun, and she fired it three or four times, there has got to be a gun with three or four blank shells in it. There has got to be a gun with three or four blank shells. That is demonstrative evidence.
If my client fired a gun, the police department, they don't have a gun, they don't have a single blank shell, not even one to indicate there's random firing going on out there at the scene... .
I submit to you that in this case, the lack of demonstrative evidence alone indicates that Mr. Harvey was not telling the truth, that in truth and in fact, he's the man who did run over those people, and almost willfully and deliberately.
During his reply, the prosecutor stated at sidebar what he proposed to argue: "One, that if she had stayed there, undoubtedly the gun would have been recovered; and two, she was the last person seen with the gun, and to ask Mr. Mahon [defense counsel] where the gun is." Defense counsel objected to the italicized argument on the ground that it would comment on the accused's failure to testify, and the court ruled:
THE COURT: Well, I  the state of record is such that I don't think it's improper for the Prosecutor to remark on that particular  in view of the comments that you made.
MR. MAHON: To ask Mr. Mahon where the gun is?
THE COURT: Yes, sir.
The prosecutor accordingly argued to the jury:
Mr. Mahon stated, in his argument, that she was last seen standing there with the gun. The complexity of that argument was that she continued to stand there. I don't know if she did or didn't. There's no evidence to it one way or another, what she did.
But, I submit that had she stayed there, the State would have had a gun, and the State would have presented that gun to you.
Now, the only thing I know about that gun is that the person that had that gun was Eleanor Wright. And I asked [sic] Mr. Mahon: "Where is the gun?"... .
At oral argument appellate counsel, including the forthright trial prosecutor, treated the challenged comment as phrased in the manner rehearsed before the trial court, without the tense change recorded by the reporter. Either version of the phonetically ambiguous word "ask" would make the comment equally objectionable; but, there being no suggestion that the comment was delivered as reciting a prior and private inquiry of defense counsel, we treat the statement as a rhetorical question, "And I ask Mr. Mahon: `Where is the gun?'"
*620 In these circumstances, the prosecutor's comment could only have carried the impression to the jury that defense counsel knew what happened to the missing gun because his client knew, and that neither had revealed that information to the state and the jury. The comment was in purport a challenge to the defendant to come forth with the missing gun or with an explanation for its absence from the trial. As a demand for self-incriminating evidence or for a testimonial explanation, the comment violated a right secured to appellant by the Fifth and Fourteenth Amendments. Ard v. State, 108 So.2d 38 (Fla. 1959); Way v. State, 67 So.2d 321 (Fla. 1953); Gardner v. State, 170 So.2d 461 (Fla. 3d DCA 1965). The comment was different in kind from a legitimate argument challenging the defendant's alibi for its lack of corroborating witnesses. Buchrem v. State, 355 So.2d 111 (Fla. 1978); Jenkins v. State, 317 So.2d 90 (Fla. 1st DCA 1975). Neither was the comment justifiable as calling attention to the defendant's failure to produce exculpatory evidence which the defense said would be produced. Lockett v. Ohio, ___ U.S. ___, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Nor is it a sufficient justification that the prosecutor was replying to a prior defense argument, as of course he was. Had the prosecutor limited himself to calling attention to the uncontroverted evidence of appellant's use of a handgun and to the defendant's possession of it when last seen, no violation would have occurred. But if legitimate defense arguments concerning the absence of an allegedly essential exhibit cannot be made except at the risk that the defendant and his counsel will be called on for its production, or for an exculpatory explanation of its absence, the criminally accused will abruptly be deprived of the historic right to remain silent and to rely for a defense on the inadequacy of the state's proof.
The conviction is REVERSED and the case REMANDED for a new trial.
ERVIN, J., concurs.
MITCHELL, HENRY CLAY, Jr., Associate Judge, concurring in part and dissenting in part.
MITCHELL, HENRY CLAY, Jr., Associate Judge, concurring in part, dissenting in part.
I concur in the conclusion of the majority that the evidence was sufficient to support the conviction. However, the majority holds that the prosecutor improperly commented to the jury on Appellant's failure to testify. I respectfully dissent on this point.
The record reflects, in my opinion, that the argument of the prosecutor was induced and invited by defense counsel's prior argument and was not prejudicial to a fair trial. I would affirm the conviction.