599 So.2d 132 (1992)
Carlton J. BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 90-02444.
District Court of Appeal of Florida, Second District.
April 15, 1992.
James Marion Moorman, Public Defender, and Timothy A. Hickey, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Susan D. Dunlevy, Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Acting Chief Judge.
Carlton J. Brown, convicted of two counts of aggravated battery, appeals his sentences imposed pursuant to the habitual offender statute, section 775.084(4)(b), Florida Statutes (Supp. 1988). The trial court sentenced him to two consecutive terms of thirty years each, with a ten-year minimum mandatory portion of each sentence, also to be served consecutively. Brown contends that it was error to impose the minimum mandatory terms consecutively as well as to impose the separate thirty-year terms *133 consecutively, citing Palmer v. State, 438 So.2d 1 (Fla. 1983). His Palmer argument is based upon the fact that there is clearly only one criminal episode here, a short but violent knife fight with two victims injured during the fight. We affirm in part and reverse in part.
The supreme court has recently clarified the issue whether minimum mandatory terms of imprisonment, imposed pursuant to a sentencing enhancement statute such as section 775.084, can be ordered to be served consecutively when the crimes occurred during a single criminal episode. In Daniels v. State, 595 So.2d 952 (Fla. 1992), the supreme court held that under such circumstances, the minimum mandatory portions of the sentences must be ordered to be served concurrently where there is no distinction in time or place between the offenses. However, where minimum mandatory sentencing is not involved, Daniels reiterates that Palmer has never prohibited consecutive sentences even though the crimes were committed during a single episode.
Accordingly, we affirm that part of the sentencing order imposing consecutive thirty-year terms, but reverse the imposition of consecutive ten-year minimum mandatory portions of those thirty-year sentences, and we remand for imposition of concurrent ten-year minimum mandatory sentences.
Affirmed in part and reversed in part.
FRANK, J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
I fully concur in the portion of the court's opinion that reverses the consecutive minimum mandatory terms. With great reluctance, I must also agree that the trial court did not abuse its discretion by imposing consecutive sentences. I doubt, however, that the consecutive sentences in this specific case are a good use of our tax dollars. On remand the trial court will have the opportunity to review the wisdom of these legal sentences under rule 3.800(b).
On April 8, 1989, at approximately 10 p.m., Mr. Brown and two other men were working on a car in a shed in their residential neighborhood. The men had been drinking beer and gin. Mr. Brown and one of the other men, Mr. Lee, began to argue. Mr. Brown pulled a knife and stabbed Mr. Lee. The other man, Mr. Hough, tried to knock Mr. Brown to the ground. In the struggle, the knife also cut Mr. Hough. Both victims suffered significant injuries.
The state did not argue that Mr. Brown intended to harm both men. It conceded that Mr. Brown only intended to harm Mr. Lee. It properly relied upon the concept of transferred intent to charge Mr. Brown with an offense arising out of Mr. Hough's injuries. See Coston v. State, 139 Fla. 250, 190 So. 520 (1939); Valassakis v. State, 187 So.2d 74 (Fla. 1st DCA 1966). The jury convicted the defendant on both counts of aggravated battery with a deadly weapon.
Mr. Brown's scoresheet recommended a sentence of up to 12 years and permitted a sentence of 7 to 17 years. The trial court, however, declared Mr. Brown to be a habitual violent felony offender and ordered him to serve two consecutive 30-year sentences. Thus, the defendant is sentenced to 60 years' incarceration. At oral argument, the state represented that this sentence will result in a minimum of 36 years' incarceration without regard to the contested minimum mandatory terms. Since Mr. Brown is 35 years old, he will be imprisoned until he is at least 71 years old.
The sentencing judge is clearly given discretion to order sentences to be served concurrently or consecutively. § 775.021(4), Fla. Stat. (1989). While I cannot say that no reasonable judge would have imposed these sentences consecutively, I suspect that many experienced judges would have concluded that concurrent sentences were a better allocation of the state's limited penal resources in this case. Despite the significant cost to taxpayers generated by lengthy sentences, the legislature currently encourages trial judges to impose long sentences for defendants with only moderate criminal records. See § 775.0841, Fla. Stat. (1991). Because of this statute *134 and because the evidence in this case establishes that one of the victims sustained a severe injury, I conclude that I must affirm a sentence that I seriously doubt I would have imposed.
This case highlights the broad sentencing discretion which trial courts now possess. Under the framework this court recently explained in King v. State, 597 So.2d 309 (Fla. 2d DCA 1992), a trial judge could sentence Mr. Brown, without any special explanation, to as little as 7 years' incarceration with normal gain time, or to as much as 60 years' incarceration with limited gain time. Unlike earlier penal systems in Florida, the Parole Commission does not have broad authority essentially to reevaluate this sentence after Mr. Brown has been in prison for a few years.
In the absence of some reevaluation process by a parole board, the broad discretion now given to our trial judges results in a penal system in which individual trial judges are given the power to commit and spend vast quantities of tax dollars over a long period of time. If the calculations of the Department of Corrections are useful for the future, the trial judge in this case has committed the state to spend up to $788,400 on Mr. Brown's room and board. See Jones v. State, 589 So.2d 1001 (Fla. 3rd DCA, 1991) (Ferguson, J., dissenting). If Mr. Brown is incarcerated for the minimum 36 years that the state predicts, the taxpayers will spend $473,040 on his stay in prison. Over half of those funds will be spent more than 15 years from now when Mr. Brown is more than 50 years old. Thus, the current system gives the trial judge almost unbridled discretion to spend funds and commit prison space in 2012 A.D., which may well be needed at that time to house people more dangerous than a 55-year-old Mr. Brown. It seems very unwise for the legislature to delegate these kinds of long-term financial and corrections decisions to the individual trial judge.
While I question the wisdom of the legislative decision, I also recognize that the appellate courts have provided little guidance to assist in the discretionary decision to impose consecutive or concurrent sentences. We have not attempted to delineate factors that are important or even relevant to the decision to impose consecutive sentences. Certainly, there are cases in which spending money on long-term imprisonment is a wise and prudent investment of limited tax dollars. The appellate courts, however, have not attempted to help the trial bench establish a rational system to select those cases. As a result, the individual trial judge must make the decision with little hope of fulfilling any uniform statewide policy.
Nevertheless, there should be a valid reason for the trial court to impose an extended sentence, especially if the consecutive sentences are lengthy. The decision to impose such consecutive sentences, if they are not actually necessary to protect the public, is very expensive for the taxpayer. It should be carefully reasoned. In this record, the only justification expressed by the trial judge was: "Sixty years with a twenty-year minimum mandatory will probably keep him in jail about seven months." If the state's representations at oral argument are correct, the trial court's offhand prediction was a vast underestimation and an inadequate reason to spend several hundred thousand dollars of taxpayers' money.
The factors which cause me to question this exercise of discretion are the following:
1. The nature of the second offense. The second offense occurred during a single brief criminal episode. The state does not argue that Mr. Brown had a criminal intent to harm the second victim; he only intended to harm the first victim. While these facts present two separate offenses and two separate victims, the single criminal intent from my perspective barely permits these cases to pass the test described in State v. Thomas, 487 So.2d 1043 (Fla. 1986); see also Daniels; State v. Boatwright, 559 So.2d 210 (Fla. 1990). The fact that the defendant was drinking alcohol at the time of this senseless fight also seems to lessen the defendant's criminal intent to some degree and to weigh against consecutive sentences. Rationally, the offense stemming from the injuries to the second *135 victim is not a factor that convinces me that Mr. Brown is more dangerous or that the public needs to spend money protecting itself from him when he is a senior citizen.
2. The defendant's guidelines sentence. This sentence is 43 years longer than the maximum permitted sentence under the guidelines. It is 600% of the recommended sentence, and 20 years more than the longest sentence authorized by the guidelines accompanying the category 4 scoresheet. It is also subject to more limited gain time. If this case were sentenced under the guidelines, it is not obvious that there would be any reason for an upward departure sentence. Admittedly, the legislature intends for career criminals to be subjected to longer jail terms, but this disparity is extreme. The presentence investigation recommended a 15-year sentence. If the legislature had retained the ability to control tax dollars spent on Mr. Brown's incarceration, I do not believe it would have decided to pay for his room and board for the second half of this sentence.
3. The defendant's prior record. Prior to this episode, Mr. Brown committed five felonies and one misdemeanor. Obviously, he had not been a model citizen. The felonies included robbery in 1978, uttering of a forged instrument in 1981, auto theft in 1985, threat by telephone in 1986, and possession of cocaine in 1988. The only violent felony was the 1978 offense, which only falls within the five-year window for habitualization because of an extended period of probation. The defendant was on community control at the time he committed these two batteries. Although the defendant's record is clearly not a good record, I am not convinced that it is the type of violent and dangerous record that most judges require before they commit tax dollars for a 60-year sentence.
4. The defendant's age. This defendant is 35. Many criminologists would argue that he is reaching an age when he should become less dangerous, not more dangerous. Concurrent sentences would permit his release from jail when he is in his late 40s. There is nothing in this record that convinces me that society needs to spend hundreds of thousands of dollars to protect itself from this man when he is between the ages of 48 and 72. It might be sensible to place him on community control or probation following the first sentence, but I see little reason to spend tax dollars for his incarceration during the last twenty years of his life.
5. The defendant's employment and marital status. Mr. Brown is a block mason who was well employed at the time of this event. He appears to need help with a drinking problem. He has had a "common law" wife for the last eight years and has supported their three children, all of whom are under the age of 11. It is unclear who will support this family during his long period of incarceration. Despite his record, this man has the ability to do something productive to care for his family and to avoid additional taxpayer expense. If he is released from prison when he is 71, he will likely be a drain on society's assets for the rest of his life.
It should be emphasized that I have never met the defendant. There may be excellent reasons to justify this long term of imprisonment. If those reasons exist, they are not apparent from this limited appellate record. Suffice it to say, my job as an appellate judge would have been much easier in this case if the record had contained some reasoned explanation by the trial judge concerning the discretionary decision to impose a 60-year rather than a 30-year sentence.