497 So.2d 1177 (1986)
Thomas Harrison PROVENZANO, Appellant,
v.
STATE of Florida, Appellee.
No. 65663.
Supreme Court of Florida.
October 16, 1986.
Rehearing Denied December 22, 1986.
*1179 James B. Gibson, Public Defender, Seventh Judicial Circuit, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
Thomas Harrison Provenzano was convicted of two counts of attempted first-degree murder and one count of first-degree murder. The trial court followed the jury's recommendation and imposed the sentence of death for the first-degree murder. The trial judge also sentenced Provenzano to consecutive thirty-year sentences for each count of attempted first-degree murder. Provenzano now appeals his conviction for first-degree murder and the sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and death sentence.
On August 1, 1983, officers Shirley and Epperson of the Orlando Police Department arrested Provenzano for disorderly conduct. The disorderly conduct charge became an obsession with Provenzano. From the day he was arrested until January *1180 10, 1984, Provenzano continually followed and threatened to kill the arresting officers. Provenzano also purchased a .38 caliber revolver, 12 gauge shotgun, a .45 caliber semi-automatic weapon, and had pockets sewn into the inside lining of his jacket in order to conceal the weapons.
On January 9, 1984, Provenzano appeared at the courthouse wearing black combat boots, army fatigue pants, a long olive drab army coat, a red bandana and a shoulder bag. Provenzano left without incident when told that he had arrived a day early for his disorderly conduct trial.
On January 10, 1984, Provenzano arrived at the courthouse early and was heard to have said "I can't wait until those two policemen walk in. I'll show them," and "I'm going to do it. This is where [these] guys get their ass kicked." As Provenzano entered Judge Conser's courtroom at about 9:30, he was carrying a red knapsack, and wearing the same jacket in which he had the inside pockets sewn. Bailiff Parker stopped Provenzano at the door and told him that he would have to leave the knapsack outside or have it searched. Provenzano then took his knapsack to his car. The knapsack contained a gun stock for his .45 caliber weapon and ammunition for the .38 caliber revolver.
Provenzano returned to the courtroom without his knapsack at 10:15. Provenzano approached the bench when his case was called. Judge Conser then instructed Provenzano to return to the spectator portion of the courtroom until his attorney arrived. Bailiff Dalton was instructed to search Provenzano. Dalton then approached him saying that he was going to have to be searched and that he was his friend. Correction Officer Parker exited the courtroom and reentered directly behind Provenzano. As the defendant reached in his pocket, Dalton went to grab him and was shot in the face by Provenzano, who screamed, "You're not my friend, M____ F____!" Provenzano then chased and fired at least two shots at Parker.
Everyone in the courtroom took cover. The people in Judge Coleman's adjacent courtroom heard the shots. Bailiff Wilkerson, the bailiff in charge of Judge Coleman's courtroom, exited the courtroom into the hallway where the shooting was taking place. Shortly thereafter, gunshots were heard. A chase ensued. Provenzano took a military stance in the corner of the hallway where he yelled, "I'm going to kill you, M____ F____, I'm going to kill all of you."
Provenzano then ducked into room 436, a lunchroom for bailiffs, and took a barricade position with the shotgun pointing into the hall. Corporal A.C. Jacobs of the Orange County Sheriff's Office shot Provenzano in the back through a window. The defendant was armed with a 12 gauge shotgun, a .45 caliber assault rifle, and a.38 caliber revolver, all loaded with live ammunition.
Dalton and Parker were both shot and injured by Provenzano. Wilkerson was shot and killed by Provenzano. Appellant alleges that numerous errors occurred at both the guilt and sentencing phases of the trial. We find no errors.
Appellant contends that the trial court committed reversible error by instructing the jury on the doctrine of transferred intent because it was not supported by the evidence adduced at trial. We disagree. Specifically, the jury was instructed that "if a person had a premeditated design to kill one person and in attempting to kill that person actually kills another person, the killing is premeditated." Clearly, this instruction is supported by the evidence.
The usual case involving the doctrine of transferred intent is when a defendant aims and shoots at A intending to kill him but instead misses and kills B. As a matter of law, this original malice is transferred from the one against whom it was entertained to the person who actually suffered the consequences of the unlawful act. Pressley v. State, 395 So.2d 1175, 1177 (Fla. 3d DCA), review denied, 407 So.2d 1105 (Fla. 1981). Obviously, the facts of this case do not fall under the common factual scenario outlined above. However, the doctrine of transferred intent is not *1181 limited to the usual example. In the case sub judice, Provenzano's premeditated design to kill Officers Shirley and Epperson directly resulted in the death of another human being. Thus, the original malice can be transferred to the person who suffered the consequence of his act, Arnold Wilkerson.
Coston v. State, 139 Fla. 250, 190 So. 520 (1939), and the instant case both involve the less common but equally valid factual scenario which warrants the application of the doctrine of transferred intent. In both instances, an intricate design to effectuate death went awry, the intended victim and the defendant were not in the same place and the victim was completely unknown to the defendant.
In Coston, the defendant poisoned a small bottle of whiskey with five times the fatal dose of potassium cyanide. Coston gave the bottle to Donald Long, intending to kill Long. Instead of drinking the whiskey, Long gave the whiskey to Robert Etty, who in turn gave the bottle to Dolores Myerly, who drank it and promptly died. In affirming the conviction for first-degree murder, the court explained:
The law, as well as reason, prevents (defendant) from taking advantage of his own wrong doing, or excusing himself when this unlawful act, if committed by (defendant), strikes down an unintended victim. The original malice as a matter of law is transferred from the one against whom it was entertained to the person who actually suffered the consequences of the unlawful act.
Id. at 253-54, 190 So. at 522.
Thus, the question here is whether at the time the murder was committed, Provenzano was attempting to effectuate his premeditated design to kill Officers Shirley and Epperson. The facts indicate that he was.
However, even if we were to conclude that the trial court erred in instructing the jury on the doctrine of transferred intent, any such error is harmless beyond a reasonable doubt. Competent, substantial evidence exists to prove that Provenzano entertained the premeditated design to kill Wilkerson.
Provenzano does not contest the fact that he shot Wilkerson. Rather, he contends that he may only be convicted of second-degree murder  a killing by an act evincing a depraved heart  because of the lack of evidence indicating that the shooting of Wilkerson resulted from a premeditated design to kill Wilkerson. See Purkhiser v. State, 210 So.2d 448 (Fla. 1968).
Premeditation can be shown by circumstantial evidence. Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). "Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues." Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). There is no prescribed length of time which must elapse between the formation of the purpose to kill and the execution of the intent; a few moments' reflection will suffice. McCutchen v. State, 96 So.2d 152 (Fla. 1957). Keeping these principles in mind, it is clear that Provenzano entertained the premeditated design to kill Wilkerson. Provenzano saw Wilkerson advancing, removed a loaded shotgun from a pocket inside his coat, and screamed "I'm going to kill you, M____ F____, I'm going to kill all of you," and fired the fatal shot when Wilkerson was two to three feet away. Thus, competent, substantial evidence exists from which a jury could conclude that Provenzano formed a premeditated design to kill Wilkerson. See Washington v. State, 432 So.2d 44 (Fla. 1983).
Appellant contends that the trial court erred in failing to grant his request for change of venue. However, this issue has not been preserved for appellate review. The trial court granted leave to file an oral motion for change of venue on the first day of trial. The motion was taken under advisement with the condition that a *1182 written motion follow shortly thereafter. No written motion was ever filed. This allegation has not been preserved for appellate review because the motion to change venue was neither written, as required by Florida Rule of Criminal Procedure 3.240 and requested by the judge, nor ruled upon by the trial court.
We choose to address the substantive aspects of this issue, however, to allay any fear that appellant did not receive a fair trial. Appellant contends that the trial court was obligated to change venue because, as Provenzano stated on the morning that the trial started, he was laboring under the misconception that the venire would be selected from voters throughout the state, and that he did not want to be tried by a jury selected from Orange County voters. Trying the case in Orange County was a tactic of the defense. Counsel testified that he would prefer selecting a jury from Orange County rather than St. Augustine  the place where the trial was going to be moved  because he felt that the insanity defense would stand a better chance in Orange County than the more conservative community of St. Augustine. This is not the proper time or place to raise allegations of ineffective assistance of counsel. Perri v. State, 441 So.2d 606 (Fla. 1983); State v. Barber, 301 So.2d 7 (Fla. 1974). Further, although Provenzano insists that he did not want to be tried by Orange County jurors he personally acquiesced to the selection of the jury panel after consulting his attorney. More importantly, the fact that the defense did not use all of its peremptory challenges is the best evidence that Provenzano was personally satisfied with the jury selected. See Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).
Appellant also argues that venue should have been changed because of the massive pretrial publicity surrounding the case. We recognize that the courthouse shooting and Provenzano's arrest received extensive publicity in Orange County. However, pretrial publicity is expected in a case such as this, and, standing alone, does not necessitate a change of venue. Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). The critical factor is the extent of the prejudice or lack of impartiality among potential jurors that may accompany the knowledge of the incident. Copeland v. State, 457 So.2d 1012 (Fla. 1984). The test to determine whether a change of venue is required is:
[W]hether the general state of mind of the inhabitants of the community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence in the courtroom.
McCaskill v. State, 344 So.2d 1276, 1278 (Fla. 1978).
The burden is on the defendant to raise a presumption of partiality. An atmosphere of deep hostility raises a presumption, which can be demonstrated by either inflammatory publicity or a great difficulty in selecting a jury. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Provenzano has failed to meet this burden. An evaluation of the pretrial publicity and voir dire testimony reveals that a fair and impartial jury was ultimately impaneled.
Provenzano cites several newspaper articles to support his contention that the pretrial publicity was inflammatory. Provenzano's contention fails because all but one of the cited articles were straight news stories of a factual nature and therefore not inflammatory. See Oats v. State, 446 So.2d 90 (Fla. 1984). The remaining item was not inflammatory. It was merely an editorial cartoon dealing with the easy access of guns and had nothing to do with the defendant personally.
The trial court did not have great difficulty in impaneling a fair and impartial jury. When Provenzano first made his oral motion for change of venue, defense counsel, the prosecutor and the trial judge all *1183 agreed that it would be best to attempt to impanel an impartial jury before ruling on the motion. We approved the procedure in Manning v. State, 378 So.2d 274 (Fla. 1979). The fact that defense counsel never renewed his motion for change of venue and the judge never ruled on the motion creates a strong presumption that a fair and impartial jury was ultimately impaneled.
Of the eighty-seven veniremen called, twenty-seven potential jurors expressed fixed opinions as to Provenzano's guilt due to information received pretrial. This is a far cry from Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), in which the United States Supreme Court noted that the trial court had great difficulty in selecting a jury where 268 of 430 veniremen were excused because they were inclined to believe the accused guilty. Rather, this case is more analogous to Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), in which the United States Supreme Court failed to find that the trial court had great difficulty in selecting a jury where only twenty of the seventy-eight persons questioned were excused because they indicated an opinion as to the petitioner's guilt. Further, the trial court did everything within its power to ensure that Provenzano received a fair trial. Any potential juror with even a hint of prejudice was immediately removed for cause, and a comprehensive gag order covered even peripheral participants.
Provenzano's last claim in regard to change of venue is that the trial judge abused his discretion by failing to grant his motion because the trial was being conducted at the very scene of the shooting. Although we agree with appellant that the fact that the trial was conducted at the scene of the crime makes this a unique case, it alone does not require us to find that the trial judge abused his discretion by failing to change the location of the trial.
The trial judge listed five aggravating circumstances in his order sentencing appellant to death: (1) the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person, section 921.141(5)(b), Florida Statutes (1983); (2) the defendant knowingly created a great risk of death to many persons, section 921.141(5)(c); (3) the capital felony was committed for the purpose of avoiding a lawful arrest or effecting an escape from custody, section 921.141(5)(e); (4) the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws, section 921.141(5)(g); and (5) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, section 921.141(5)(i).
Provenzano challenges two of the aggravating circumstances. He contends that the murder was not committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. Specifically, appellant alleges that the proof and testimony that Provenzano planned the death of Officers Shirley and Epperson is irrelevant to finding enhanced premeditation to kill Arnold Wilkerson. We disagree. Heightened premeditation necessary for this circumstance does not have to be directed toward the specific victim. Rather, as the statute indicates, if the murder was committed in a manner that was cold and calculated, the aggravating circumstance of heightened premeditation is applicable. (Emphasis supplied.) The facts herein indicate that the manner in which Provenzano effectuated his design of death was cold, calculated and premeditated beyond a reasonable doubt.
Appellant's contention that the trial court erred in finding that the murder was committed to disrupt or hinder the lawful exercise of a governmental function is without merit. This circumstance is appropriate because Provenzano intended to disrupt his trial, thus hindering one of the most basic government functions. This factor was not improperly doubled with the finding that the murder was committed to avoid lawful arrest because separate factual circumstances support each finding. See Tafero v. State, 403 So.2d 355 (Fla. 1981). *1184 The fact that Provenzano murdered Wilkerson to avoid his lawful arrest for the attempted murder of Dalton supports the finding that the murder was committed to avoid lawful arrest. As noted above, the fact that Provenzano attempted to disrupt his trial supports a finding that the murder disrupted a governmental function.
The sole mitigating factor found by the trial court was that Provenzano had no significant prior criminal history. Provenzano contends that the trial court erred in failing to find that the murder was committed while under the influence of extreme mental and emotional disturbance. § 921.141(6)(b). In support, Provenzano cites the testimony of various psychiatrists who testified that Provenzano was suffering from some form of emotional disturbance. However, this testimony alone does not require a finding of extreme mental or emotional disturbance. See, e.g., Pope v. State, 441 So.2d 1073 (Fla. 1983). As long as the court considered all of the evidence, the trial judge's determination of lack of mitigation will stand absent a palpable abuse of discretion. Id. at 1076. That portion of the sentencing order which addresses the issue of whether Provenzano was suffering from extreme mental or emotional disturbance states as follows:
Although there was some evidence produced at the trial that this defendant may have been under extreme mental or emotional disturbance, the court, after viewing the entire evidence in this case, finds that any mental or emotional disturbance suffered by this defendant prior to the murder occurred many years before the murder in which he has been charged, and though he may have been angry at Officers Paul Shirley and Rick Epperson, or upset by the fact that Bailiff Harry J. Dalton had informed him that he would have to be searched while he was in courtroom number 416 of the Orange County Courthouse, any mental or emotional disturbance suffered by the defendant, either in the past or on the day of the commission of the crime charged, does not rise to the level of a mitigating circumstance.
We conclude that the trial court considered all of the evidence presented, and found in its sound discretion that it did not rise to the level of a mitigating circumstance.
We also reject Provenzano's contention that the trial court abused its discretion in failing to find that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, section 921.141(6)(f). Three of the five psychiatrists who testified stated that Provenzano knew right from wrong on the day of the shootout. Further, Provenzano admitted on cross-examination that he knew it was a crime to carry concealed weapons. In addition, several actions taken by Provenzano on the day of the shootout support a finding that he knew his conduct was wrong and that he could conform his conduct to the law if he so desired. The fact that Provenzano secreted the weapons indicates that he knew it was unlawful. Minutes before the shootout he put change in the parking meter so he would not get a ticket. Further, rather than submit to a search of his knapsack that would have exposed his illegal possession of weapons, Provenzano decided to take his knapsack outside to his car.
Provenzano cites a number of nonstatutory mitigating factors that he feels apply to this case. However, none of the factors cited are supported by the record.
Appellant complains that improper prosecutorial questioning and argument deprived him of his right to a fair trial. The record refutes any contention of improper accumulation of errors. In this context we note that assuming arguendo that appellant is correct that two aggravating circumstances were improperly found, in light of the three that remain, balanced against only one mitigating circumstance, the sentence of death is still appropriate. Kennedy v. State, 455 So.2d 351 (Fla. 1984), cert. denied, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985).
*1185 Appellant's contention that the sixth amendment right to jury trial is violated by Florida's death penalty procedure because the trial court determines the facts anew after the jury issues its recommendation is without merit. The United States Supreme Court recently recognized the validity of the trial judge's power to impose the death sentence. Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Further, the trial judge does not consider the facts anew. In sentencing a defendant, a judge lists reasons to support a finding in regard to mitigating or aggravating factors. These reasons are taken from all the evidence in the case and any further evidence presented at the time of sentencing. Moreover, the sentence of death is not unconstitutional as applied.
For the reasons expressed, we affirm the appellant's conviction and the imposition of the death sentence.
It is so ordered.
BOYD, EHRLICH and SHAW, JJ., concur.
McDONALD, C.J., concurs in the conviction, but dissents from the sentence with an opinion.
OVERTON, J., concurs in the conviction, but concurs in result only of the sentence.
McDONALD, Chief Justice, concurring in part and dissenting in part.
I dissent on the sentence because I believe the evidence is overwhelming that Provenzano's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; therefore, the trial judge erred in not weighing this circumstance when imposing sentence.