FRANK, Acting Chief Judge.
Douglas E. Parsons was charged with and convicted of first degree murder after he shot Robert Roman, the owner and proprietor of Romano’s Lounge and Bar. Roman and Parsons had been friends and Parsons’ wife, Janet, worked for Roman as a bartender. On Sunday, June 10, 1990, as Parsons sat in his truck and Roman stood leaning on the passenger door, the two engaged in conversation in Romano’s parking lot. The record does not disclose, however, either the words spoken or the mood that existed between Roman and Parsons. Parsons shot Roman with a gun he had a short time earlier placed in his truck. Parsons testified that the gun was in his truck because of his purpose to try to sell it to a patron at Romano’s. When he put his hand on the gun to take it into the bar, Roman misapprehended his purpose and suddenly grabbed at him. A brief struggle ensued and the gun accidentally fired twice, the second shot causing Roman’s fatal abdominal wound. The state has contended at all stages of this matter that *68 Parsons arrived at Romano’s intending to shoot Janet but it was Roman who became the target. Following the shooting, Parsons sped away but was soon apprehended. Based upon the analysis set forth below, we reverse.
The prosecution of Parsons was pursued on the principle of transferred intent. Our supreme court declared in Provenzano v. State, 497 So.2d 1177 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987), that the doc trine of transferred intent is not limited to the “usual case” involving a defendant who aims at one person intending to kill him but instead misses and kills another. The court decreed that it is the “intricate design to effectuate death” which, when its attempt goes awry, authorizes the application of the doctrine. Provenzano, 497 So.2d at 1181. Here, then, the critical question deriving from Provenzano is whether Parsons, at the time that Roman was murdered, was attempting to implement a premeditated design to kill Janet. There is, however, no direct evidence that “at the time the murder was committed, [Parsons] was attempting to effectuate [a] premeditated design to kill [Janet].” 497 So.2d at 1181. The state has attempted at every turn to overcome that evidentiary deficiency through reliance upon certain hearsay statements attributing comments to Janet implicating Parsons in threats to kill her. Given the murkiness surrounding Parsons’ motive to kill Roman, we are persuaded that the inadmissible hearsay became a feature of the trial and provided, almost exclusively, the evidence of Parsons’ homicidal intent. The application of the doctrine of transferred intent, as it was illuminated in Provenzano, is questionable in this proceeding.
The marital unrest between Parsons and Janet was the starting point in the state’s case. At the trial, the state attempted to paint a bleak and stormy picture of the Parsons’ marriage. Parsons and Janet each acknowledged that their marriage was decaying and that they had grown apart. Parsons had decided to leave Janet and, in fact, he was preparing for the separation on the date of the crime. During that day he paid two visits to Janet at Romano’s. On the second visit Roman asked Parsons to discontinue visiting Janet; he had initiated a new policy of not allowing family visits during working hours and Roman told Parsons that his continued presence at the bar would jeopardize Janet’s job. Parsons left quietly without argument or objection.
In her testimony Janet repeatedly denied that her husband had ever threatened her or caused her to feel anxious about her safety. Her denials effectively emasculated the state’s theory of a preconceived purpose to kill her — the keystone element in the state’s contention that Roman’s death was the product of a transferred intent. Ostensibly to cast doubt upon her credibility, the state bombarded the jury with a parade of witnesses who testified to Janet’s prior inconsistent statements, the thrust of which was that Parsons had threatened her and made her fear for her life, on both the day of the shooting and earlier in the weekend. Deputy Frank Des-rosiers and Deputy Cheri Thornton, who interviewed Janet after the shooting, each testified that Janet stated that Parsons had called her at work on the day of the shooting and spoke the following menacing words: “Tonight is your night, you’re going to get it, I don’t care if I have to go to prison for the rest of my life.” Lori Phipps, a close friend of Janet’s, testified that Janet told her that her husband had called her on Friday night and threatened to shoot the next person who walked through the door. Further, stated Lori, Janet was frantic when her husband drove up to Romano’s. Detective Thornton also testified that Janet made statements to her about the Friday night threats. In short, constantly before the jury was not only the issue of Janet’s credibility, but also the nagging question of whether Parsons had ever actually expressed a serious intent to kill his wife, again an essential component in the state’s prosecutorial theory.
Apart from the testimony that Parsons and his wife had quarrelled, albeit not violently, and had contemplated separation, the state’s only substantive evidence of *69 Parsons’ state of mind at the moment when he returned to Romano’s parking lot appears in the testimony of Joseph Clark, who had encountered Parsons at another bar earlier that day. In a manner and tone that Clark characterized as “barroom talk,” Parsons jokingly talked about “blowing his wife away” and going to Mexico. Clark, however, did not consider the utterances to be serious. Parsons’ statement to Clark may shed light on his intent, but nowhere does Clark say that Parsons had told his wife that he intended to “blow her away.” Thus, the primary impression left by the impeachment evidence was substantive — it established facts that had not been introduced into evidence. See Mazzara v. State, 437 So.2d 716 (Fla. 1st DCA 1983), rev. denied, 444 So.2d 417 (Fla.1984).
We hasten to say that the trial court did not admit the challenged testimony without substantial forethought. The jury was instructed on each occasion when the state impeached Janet, and again when the jury was charged, on the limited basis for which the testimony was to be considered. Nevertheless, meticulous instructions cannot always be relied upon to erase the prejudice created after the jury has heard the substance of the prior statements. Rankin v. State, 143 So.2d 193 (Fla.1962).
Evidence as to premeditation in this case was scant to the vanishing point. “Why did Parsons kill Roman?” the jury was forced to ask. “What happened between them?” It appears that no one was competent to testify as to the words Parsons and Roman exchanged immediately before the shooting. It cannot be gainsaid, based upon the totality of the evidence, that if the jury believed Parsons went to Romano’s intending to shoot Janet, that belief could only have arisen from the improperly admitted impeachment evidence.
Finally, the state has suggested that if we reverse on the evidentiary point we would be underestimating the capability of the jury to differentiate between impeachment and substantive evidence. See, e.g., State v. Bryan, 287 So.2d 73, 76 (Fla.1973), cert. denied, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974) (“Sometimes we underestimate the intelligence and comprehension of our juries; they do not have to have every single detail spelled out to them, for they are accepted on the basis of their average and ordinary understanding and intelligence in the ordinary matters of life and in applying the evidence”). In reviewing this case and in studying the transcript we have put ourselves in the jury box, and even without the impact of live testimony, facial expressions, and the other nuances of a trial as it unfolds, we have found it difficult to isolate, extract and lay aside the substance of these statements, and to consider only whether Janet was telling the truth when she denied ever having told anyone that Parsons had made the statements the hearsay ascribes to him.
Accordingly, we hold that the prejudice to Parsons in the admission of the hearsay statements outweighed any value they might have had for casting doubt upon Janet’s credibility.
We reverse and remand for a new trial.
PATTERSON, J., concurs.
PARKER, J., concurring specially.