620 So.2d 1010 (1993)
Monta James SHELLMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3337.
District Court of Appeal of Florida, Fourth District.
April 14, 1993.
Rehearing Denied July 15, 1993.
*1011 Richard L. Jorandby, Public Defender, and Louis G. Carres, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Appellant was charged by indictment with: (1) the first degree murder of Corey Brown; (2) the attempted first degree murder of Eddie Ransom; (3) the attempted first degree murder of Tony Fudge; and (4) shooting into an occupied vehicle.
The jury found appellant guilty as charged in the indictment and recommended that appellant be sentenced to life imprisonment on the capital conviction. The trial court adjudicated appellant accordingly and sentenced him to life imprisonment with no parole for a minimum of twenty-five years for the first degree murder of Corey Brown. Utilizing a category one scoresheet for the non-capital offenses, the trial court sentenced appellant to two consecutive terms of life imprisonment for the attempted murder convictions. The court further sentenced appellant to a consecutive fifteen year term of imprisonment for shooting into an occupied vehicle.
We affirm the judgment and sentence except for the two convictions for attempted murder in the first degree, which judgments and sentences we reverse and remand with direction to enter judgments and sentences for attempted murder in the second degree. We will discuss only that issue which compels reversal.
In denying appellant's motion for judgment of acquittal as to the attempted murder counts, the trial court misapplied the doctrine of transferred intent. In Provenzano v. State, 497 So.2d 1177 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987), the supreme court ruled that the doctrine may be applied when an "intricate design to effectuate death" goes awry, even when the intended victim and the defendant were not in the same place and the victim was completely unknown to the defendant. Id. at 1181. While Provenzano seems to indicate a willingness to expand the application of the transferred intent doctrine, the instant case contains one important and, for lack of a better term, fatal distinction. Unlike the defendant in Provenzano, appellant's design to effectuate the death of another human being did not go awry. The evidence indicates that he successfully completed his plan to kill Corey Brown. The injury to Ransom and potential injury to Fudge did not result from appellant's failed attempt to murder Brown. Appellant completed his plan; therefore, as appellant asserts, there was simply no "intent" to transfer.
The state argues that once a defendant forms a premeditated intent to kill any human being, the law properly transfers the felonious intent to the actual object of the defendant's assault. The state relies on the wording of section 782.04(1)(a), Florida Statutes (1991), which proscribes the killing of any human being and not merely the killing of the person intended. In the instant case, however, the actual object of appellant's "assault" was also the intended victim. The doctrine of transferred intent clearly envisions some form of mistaken *1012 identity or a flaw in the defendant's design to effect death involving someone other than the intended victim. Because appellant successfully executed his plan and murdered Corey Brown, the trial court was precluded from using the transferred intent doctrine to support the convictions for attempted murder in the first degree. There is nothing in the record to indicate that appellant intended to kill either Ransom or Fudge.
Having said all of that, section 924.34, Florida Statutes (1991), provides that when this court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense, this court "shall reverse the judgment and direct the trial court to enter judgment of the lesser degree of the offense... ." The foregoing is our reason for directing the trial court to enter judgments for attempted second degree murder. Second degree murder is defined as
[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life although without any premeditated design to effect to the death of any particular individual....
§ 782.04(2), Fla. Stat. (1991). Premeditation is the essential element that distinguishes first degree murder from second degree murder. Wilson v. State, 493 So.2d 1019 (Fla. 1986). In repeatedly firing his rifle into Brown's vehicle, appellant committed an act "imminently dangerous" to the lives of Ransom and Fudge and "evinced a depraved mind regardless of human life." See, e.g., Vause v. State, 424 So.2d 52 (Fla. 1st DCA 1982) (defendant's action of firing his rifle at two departing vehicles and killing a passenger could have justified a verdict of at least second degree murder), quashed in part on other grounds, 476 So.2d 141 (Fla. 1985). We further note that appellant's convictions for attempted murder in the second degree and shooting into an occupied vehicle will not violate double jeopardy. See State v. Reddick, 568 So.2d 902 (Fla. 1990); Kelly v. State, 552 So.2d 206 (Fla. 5th DCA 1989), rev. denied, 563 So.2d 632 (Fla. 1990).
GLICKSTEIN, C.J., and LETTS and GUNTHER, JJ., concur.